### IN THE

## SUPREME COURT

#### OF THE

# STATE OF ARKANSAS,

### In July Term, A. D. 1840, being the sixty-fourth year of our Independence.

---

### LORENZO GIBSON *against* THE COUNTY OF PULASKI.

#### CERTIORARI *to the County Court of Pulaski.*

The right of keeping a stallion is strictly and emphatically a common right, not derived from, or enjoyed by virtue of, any grant from the Government; nor is it enjoyed by part, and denied to others, of the community. Consequently it cannot be metamorphosed into a privilege, subject to taxation as such.

That provision of the statute of Nov. 7, 1836, which provides for levying a tax, for the privilege of keeping a stallion, is unconstitutional.

The plaintiff presented his petition to one of the Judges of the Supreme Court, in vacation, to be relieved from the payment of a sum of money with which he stood charged on the tax book of Pulaski county, for the year 1838, as a county tax imposed on him for the privilege of keeping a stallion, or stud-horse, and thereupon, according to the prayer of his petition, obtained a writ of supersedeas, suspending the collection thereof until the matter could be heard in the Supreme Court; and also, a writ of *certiorari* addressed to the County Court of the county, commanding it to certify, and send to this court, a transcript of the assessment list, and tax book of the county for the year 1838, together with orders made, and proceedings had, touching the

39

adjustment of the tax book; and the imposition of county taxes for that year, by the County Court; and also the proceedings and adjudication of the County Court, on the motion of Gibson, made at the April term, A. D. 1839, to be discharged from the payment of such tax; which writs were issued, and returned.

The return to the writ of *certiorari* showed that the plaintiff's name, without any thing whatever taxable annexed to it, stood upon the assessment list; but that he was charged on the tax book, purporting to be founded on and made out from said list, with several things subjected to taxation by statute, among which was one stallion, standing per season at $50. It also appeared that the County Court, at the January term thereof, 1838, imposed a tax on the privilege of keeping each stallion, equal to the sum for which such stud horse should stand for the season; and that the plaintiff was charged on the list placed in the hands of the Sheriff for collection, with the sum of $50 as a county tax for the privilege of keeping one stallion; that he moved the County Court at the April term thereof, A. D. 1839, to discharge him from said tax, on the ground that the same was levied as upon a privilege, contrary to the Constitution, but the court, on consideration thereof, overruled said motion. The return also shows that the Sheriff had paid into the county treasury the whole amount of county taxes charged and contained in the tax book for the year 1838.

TRAPNALL & COCKE, for the petitioner:

The only question which we mean to present to the consideration of the court respects the constitutionality of the act of the Legislature authorizing the imposition of this tax. The second section of the Constitution, under the head of revenue, declares " that all property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct; making the same equal and uniform throughout the State. No one species of property, from which a tax may be collected, shall be taxed higher than another species of property of equal value; provided, the the General Assembly shall have power to tax merchants, hawkers, pedlers, and privileges, in such manner as may from time to time be prescribed by law."

The constitutionality of this law can only be sustained by showing that the right to keep and stand a stallion is a privilege in the legal constitutional sense of this term. To show conclusively, that it is not, we refer the court to *Jacobs Law Dic. vol.* 5, *title privilege,* 287; *the People vs. Utica Ins. Co.,* 15 *J. R.* 387; 7 *Com. Dig. privilege,* 113; 3 *Jacobs. Law. Dic. Franchise,* 122.

CLENDENIN, *Contra:*

By the act of the General Assembly, passed 1836, the County Court is authorized to assess a tax upon " each stallion or jack equal to the sum for which such stud horse or jack shall stand for, the season. See *Laws of* 1836, *p.* 189. Under this act the County Court of Pulaski county assessed upon L. Gibson the sum of fifty dollars for the year 1838, as a tax upon him for the *privilege* of keeping a stud horse, for whose services he charged the said sum; and the plaintiff in error objecting to said tax as one not authorized by the Constitution, prosecutes his appeal to this court.

By the second section of the Constitution, on the subject of revenue, it is declared " that all property subject to taxation, shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than another species of property of equal value; provided, that the General Assembly shall have power to tax merchants, hawkers, pedlers, and *privileges* in such manner as may from time to time be prescribed by law." By this section of the Constitution it will be perceived that the General Assembly have the power to tax *privileges* in such manner as they may prescribe; and the only question, therefore, that arises in this case, is whether the keeping of a stud horse, as described by the statute, is a privilege, as meant by the Constitution. The term privilege as used in the English laws and authorities seems to apply exclusively to certain personal advantages, which individuals obtained in preference to those not so much favored, and which owing to the more liberal formation of our government, seems to have become entirely obsolete, and in their place our laws and customs have adopted, (and grant,) *privi-*

*leges* of a more general character, and by which the public good is more immediately advanced; such, as for instance, the *privilege* of keeping a ferry, or of charging toll on a bridge, of banking and issuing bank notes, and others of the same character, in all of which the public interest seems to be consulted.

To more clearly understand the term and word privilege, as used in our Constitution, we will be compelled to seek the word and its application. " Privilege" is defined by Webster to be, " a particular and peculiar benefit or advantage enjoyed by a person, company, or society, beyond the common advantages of other citizens. 2d. Any peculiar benefit or advantage, right or immunity, not common to others of the human family. 3d. Advantage, favor, benefit;" and it is further defined, " to grant some particular right or exemption to, to invest with a peculiar right or immunity."

In construing a statute, and applying the meaning to words doubtful, the courts will always give to those words their common and most generally received interpretation and meaning. And, in this case, it is for the court to say whether the keeping a stallion and charging for his services a certain amount, is such a *privilege* as is meant by the Constitution, and upon which the General Assembly had the power to assess other than a tax equal to the value of the property.

It is urged that in cases like the present it is not the stallion or property which is taxed; but the particular and peculiar benefit and advantage enjoyed by the owner, which is taxed, a right to charge for the services of his stallion, a *privilege* which no other individual is entitled to without paying a like tax for his *privilege*, therefore, it is a favor and a peculiar right or immunity. If this is a proper construction to put upon the section of the Constitution already referred to, undoubtedly the General Assembly had the power to say what tax the citizen should pay for this peculiar immunity and benefit, this *privilege;* and the County Court had a right to assess the tax, and their officer, the Sheriff, authority to collect it.

RINGO, *Chief Justice,* delivered the opinion of the Court:

The plaintiff expressly waives all objections to such discrepancies and irregularities, as are shown by the return of the County Court,

and submits the single question, whether the keeping of a stud horse is a privilege embraced by the Constitution which may be taxed as such.

The attorney representing the county is also understood to rest the case solely upon the validity of the act of the Legislature, approved November 7th, 1836, in pursuance of a provision contained in the third section of which the tax in question is imposed. The section enacts "that in order to raise a revenue for county purposes in addition to the sums arising from tavern, grocery and ferry licenses, the county courts of the respective counties in this State shall have power to levy a tax of not exceeding fifty cents of each and every free male inhabitant, between the age of one and fifty years, residing in their respective counties; and *for the privilege of keeping each stallion or jack, a tax equal to the amount for which every such stud horse, or jack, shall stand for the season;* and a tax on the value of all property made taxable by the first section of this act not exceeding one-fourth of one per cent. on the nett value thereof; which taxes shall be levied and collected in the same manner as State taxes are, and paid over to the County Treasurers of the respective counties." *Acts* 1836, *p.* 189. The first section of this act subjects " all horses, mules, jack, jennies, and neat cattle of whatsoever kind, or description, above three years old," to taxation; and therefore, according to the express letter of the section above quoted, the county court may levy on stud horses, a tax *ad valorem*, in addition to the price for which he stands for the season; though in the present instance, such charge does not appear to have been made. Yet if the keeping of a stud horse may be taxed as a privilege, the act in question warrants it. But how is the keeping of a stallion metamorphosed into a privilege? It certainly is not a right derived from, or enjoyed by virtue of, any grant from the government; nor is it enjoyed by part, and denied to others of the community. It is a right which, under our political organization, may be enjoyed as perfectly without, as with the aid of a grant from the Legislature. It is strictly and emphatically a common right, which cannot be denied, though it may be so restricted and regulated by law, as to prevent injury to others, as well as improper, obscene, or offensive exhibitions of such beasts, but such laws can only be enforced by the infliction of

penalties and punishments on those who violate such legal restrictions or regulations. Besides which, stallions are unquestionably property, within any legal definition of the term, and as such, every person in this State has the absolute right of acquiring and keeping them. *Const. Ark., Art.* II, *Sec.* 1. And this is a right of which no one can be deprived by any act of the Legislature, and therefore, as the right is absolute, and enjoyed by all, and none can be deprived of its benefits, it cannot by possibility be created a privilege to be enjoyed by a portion of the community only. This principle is also asserted and enforced in the case of *Stevens and Woods vs. the State, ante p.* 291. We are therefore of the opinion, that so much of the 3rd section of the Statute, approved Nov. 7, 1836, as purports to authorize a tax to be levied "for the privilege of keeping each stallion," is in conflict with, and repugnant to the Constitution of this State, and void, and the tax with which the plaintiff is charged, in pursuance of said provision, on the tax book of the county of Pulaski, for the year A. D. 1838, is wholly unauthorized by law, and the judgment of the County Court directing it to be levied is illegal, and ought to be, and the same is hereby quashed, and set aside with costs, and the collection thereof perpetually superseded.

But to prevent any misunderstanding, or misapplication of the principles asserted and decided in this case, as well as the case of *Stevens and Woods*, above cited, it may not be improper, before we dismiss this subject, to remark, that the court has not intended to decide, or in fact decided, whether the taxes levied for county purposes, must be *ad valorem*, and equal and uniform throughout the State, or may be otherwise in the discretion of those to whom the power of prescribing such taxes is confided, or what property, or things, may be constitutionally taxed. These are, in the opinion of this court, important questions, not necessarily involved in either case, in relation to which the court has not designed either to express, or intimate any opinion.