PLUM BAYOU LEVEE DISTRICT *v.* POCKET CYPRESS DRAINAGE
DISTRICT No. 1.

Opinion delivered October 20, 1924.

1. DRAINS—TIME FOR APPEALING CASES.—A provision in a special
   act creating a drainage district that in cases "involving the valid-
   ity of this district, or the assessment of benefits, and all suits
   to foreclose the lien of taxes * * * all appeals therefrom must
   be taken within thirty days," has no application where none
   of the above matters are involved, in which case the general
   statute of six months governs as to the time for appealing.

2. DRAINS—ENGINEER'S DISAPPROVAL OF PLANS.—Under Special Acts
   1923, p. 1745, § 12, creating a drainage district, which provides
   that the drainage ditch may pass through a levee at a designated
   point, and that the engineer of the levee district shall approve
   the plans and specifications of the floodgates to be installed,
   *held* that, where the engineer disapproved such plans upon the
   ground that the place designated for passage of the ditch was
   inappropriate, his decision was erroneous, the statute being con-
   clusive on that question.

Appeal from Lonoke Chancery Court; *John E. Mar-
tineau,* Chancellor; affirmed.

*Coleman & Gantt,* for appellant.

The decision of the chief engineer is binding, and
cannot be questioned except for fraud, or for such gross
mistake as implies bad faith, or a failure to exercise an
honest judgment. 83 Ark. 136. The fact that the court
might differ with chief engineer in his conclusions will
not warrant setting aside his findings. 17 How. 344.
The burden was upon the plaintiff to show that the chief
engineer's requirements were made in bad faith. 112
Ark. 83.

*Gray & Morris,* for appellee.

Where an arbitrator is selected by the Legislature,
strong and satisfactory evidence only is required by the
plaintiff. 43 L. R. A. 843. Where the plans and specifi-
cations have been approved by the chief engineer, his
decision upon other matters is not material to the issue
nor binding upon appellee. 88 Ark. 214.

McCULLOCH, C. J. Under authority of a special
statute enacted by the General Assembly in the year

1905, Plum Bayou Levee District, created by that statute, constructed a levee along the east bank of the Arkansas River in Pulaski, Lonoke and Jefferson counties, to protect the adjacent lands from flood waters of the river. The levee begins at a point near Old River, in Pulaski County, and extends southeasterly along the bank of the river for a distance of about forty-three miles, ending at a point south of Rob Roy, and it protects an area of about 377,000 acres, the levee being maintained by the district.

The General Assembly of 1923 enacted a statute (Special Acts 1923, p. 1745) creating a drainage district known as Pocket Cypress Drainage District No. 1 of Pulaski and Jefferson counties, and it embraced an area of about 12,000 acres within the boundaries of the levee district for the purpose of draining that area. A section of the statute creating the drainage district reads as follows:

"Section 12. The commissioners are hereby granted the privilege to pass through Plum Bayou at a point near the mile-post between miles 18 and 19, in section three (3), township three (3) south, range ten (10) west, Jefferson County. However, all plans, specifications and installation of the necessary floodgates to be installed through said levee shall be approved by the chief engineer of the Plum Bayou Levee District."

Plans and surveys were made by the drainage district, at considerable cost, to carry out the work of constructing the drainage canal or ditch, and also plans and specifications were made by the engineer of the drainage district for passing the drainage canal through the levee at the point designated in the statute and for the installation of necessary floodgates. These plans were presented to the chief engineer of the levee district, who declined to approve them, and this action was instituted in the chancery court by the drainage district against the levee district to obtain a mandatory injunction compelling the levee district to permit the passage of the ditch through the levee, and to enjoin the levee district from interfering with the prosecution of that work. An answer

was filed by the levee district alleging that the plans and
specifications for the passage of the drainage ditch
through the levee and the installation of floodgates were
inadequate to protect the levee, and that the engineer of
the levee district had properly declined to approve them.
The answer also attacked the validity of the statute
creating the drainage district on the ground that it was
an attempt to take property without compensation and
without due process of law.

There was a trial before the chancery court on oral
testimony of the respective engineers for the two dis-
tricts, and other engineers, and also upon all of the maps
showing the character of the area and the proposed plans
and specifications for the work of passing the ditch
through the levee and installing the floodgates. There
were several sittings of the court and examinations and
reexaminations of the engineers. In the beginning of the
trial there were many points of difference between the
opinions of the several engineers, but these differences
were, to a considerable extent, eliminated as the trial pro-
gressed, and there was an exchange of views as to the
plans for this work. The issues of fact finally settled
down to the question as to the place for cutting through
the levee and the proper safeguards to be adopted for
temporarily protecting the levee while the work of con-
structing a floodgate and spillway was in progress. The
main contention of the levee district and its engineer
was that the point designated in the statute was not an
appropriate one, for the reason that there was danger of
the levee caving at that place on account of the encroach-
ment of the river. The chancery court rendered a decree
granting the relief prayed for by the drainage district.

The appeal to this court was not perfected for nearly
six months after the rendition of the decree, and the
appellee moved to dismiss on the ground that the statute
creating the drainage district provides that, in all cases
"involving the validity of this district, or the assessments
of benefits, and all suits to foreclose the lien of taxes, * * *
all appeals therefrom must be taken and perfected within

thirty days." Appellant has abandoned the attack on the validity of the statute by failing to insist upon it here, and that strips the case of any of the characteristics which are embraced within the statute which shortens the time for appeal. The case, as it now stands, does not involve the validity of the district, or the assessments of benefits, and it is not a suit to foreclose the lien for taxes, hence the appeal may be prosecuted within the time specified by the general statute fixing six months as the time for appeal to this court. *Davis* v. *Cook,* 155 Ark. 613.

The contention of learned counsel for appellant is that, under a fair construction of § 12 of the statute creating the drainage district, the privilege of passing the ditch through the levee is conditional on the approval of the chief engineer of the levee district as to the selection of the place, as well as to the sufficiency and correctness of the plans and specifications. On the other hand, it is contended for the drainage district that the statute itself fixes the particular point for the passage of the drainage ditch through the levee, and that the requirement for securing the approval of the levee district relates only to the plans and specifications for the construction of the work at the place mentioned in the statute. We are of the opinion that the construction contended for by appellee is the correct one. In fact, the language of the statute admits of no other interpretation, for it plainly and definitely specifies in absolute terms that the drainage district shall have the privilege of passing the ditch through the levee at a designated point. Of course, the use of the word "near" gives a little latitude, but it clearly means that the point of passage shall be approximately at the mile-post between the designated sections. If there was nothing more in this controversy than the question as to the particular spot where the ditch should pass through the levee, there would be room for contention that there should be approval by the engineer of the levee district, but the contention of that engineer is that no point anywhere near the one designated is appropri-

ate, and, in order to carry out the views of the engineer, it would be necessary to make a radical change in the location. In fact, he contends that the levee should not be cut at all, but that the ditch should be run into Plum Bayou, and that that stream should be straightened so as to carry the water into the Arkansas River. This, according to the proof, would entail large expense, out of proportion to cost of drainage improvement; but, without discussing that feature of the testimony, we find it sufficient to say that the Legislature itself has granted the privilege of passing the ditch through the levee and has designated the place where it should be done. The evidence adduced in the case is not sufficient to show that the statute selecting the place is arbitrary or demonstrably erroneous. With this point in the controversy settled, it is clear that the refusal of the engineer of the levee district to approve the plans was arbitrarily based on what he conceived to be a proper selection of the place. It is true, as contended by counsel for appellant, that the engineer was, by the statute, constituted the arbiter concerning the approval of the plans, and that his decision is binding, except for fraud or gross mistake (*Carlile* v. *Corrigan*, 83 Ark. 136), but the fact that the engineer based his disapproval wholly on the selection of the place for passing the ditch through the levee—a matter not involved in his decision—his determination is based on an obvious error, and is not binding.

The question of the selection of the place having passed out of the case, the only objections relate to the matter of temporarily protecting the levee during the period of cutting the ditch through the levee and constructing the floodgate and spillway. On the final examination of the engineer he conceded that, if the work was to be done at that place, the plans and specifications met his approval, and were such as he would adopt himself. The temporary protection was afforded by the decree of the court in providing that the work should be done during the months of August, September and October, where there is no probability of high water interfering.

With this and other safeguards specified in the decree to be thrown around the time and method of the construction of the work, any objections to the construction of the work under those plans and specifications were captious. The real controversy in the case was, as before stated, in relation to the selection of the place. In the final analysis there has been no substantial controversy as to the plan nor as to the method and time for the work to be done.

The decree of the chancery court is therefore affirmed.