Mashburn *v.* North Arkansas Highway Improvement District No. 3.

Opinion delivered December 22, 1924.

1. Highways—authority to make changes in route.—Under act No. 32, approved February 3, 1920, establishing the North Arkansas Highway Improvement District No. 3, which authorized the board of commissioners to straighten and change the line of the public roads to be improved, it was the intention of the Legislature to give the commissioners authority to improve public roads already laid out, and to make only immaterial changes in them or to straighten or widen them.

2. Highways—preliminary survey.—A preliminary survey is work undertaken by a highway improvement district to determine whether or not the work can be made under the terms of the act creating the district, and its cost is an incident to the organization of the district, and, in case the project is abandoned, its cost should be borne by a tax on the lands.

3. Highways—preliminary survey—engineer's compensation. —Where an engineer in good faith performed services in making a preliminary survey and plans for a road improvement, he is entitled to a reasonable compensation for so much of his work as was performed within the authority of the act providing for the improvement.

Appeal from Sharp Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*J. W. House, Jr.,* for appellant.

*D. L. King, C. E. Elmore,* and *Arthur Sullivan,* for appellee.

Appellant was not entitled to recover for preliminary work at any place other than on the road as created by the act. 59 Ark. 344; 31 Ark. 720; 103 Ark. 269. The commissioners did not have authority to authorize the survey for construction of new roads. 89 Ark. 513; 118 Ark. 119; 148 Ark. 365. See also 142 Ark. 509; 133 Ark. 491.

McCULLOCH, C. J. North Arkansas Highway Improvement District No. 3 is composed of territory embraced in the counties of Sharp, Lawrence, Izard and Fulton, and was created by act No. 32 (unpublished), approved February 3, 1920, of an extraordinary session of the General Assembly. The statute is in the usual form, creating the district, providing for commissioners in each county, to be appointed by the respective county courts, and conferring authority to improve the road mentioned, to borrow money, assess benefits and levy taxes. Power is also conferred to employ engineers and other agents to carry on the work. Section 2 of the statute describes the route of the public road to be improved as one beginning near Mammoth Spring, in Fulton County, "at a point to be selected by the commissioners," thence in a general southeasterly direction to the towns of Hardy and Williford, in Sharp County, and thence to the town of Ravenden, in Lawrence County; also beginning at or near Mount Olive, on White River, at a point to be selected by the commissioners, thence northeasterly through the towns of Melbourne, La Crosse, Violet Hill, Franklin and Myron, in Izard County, and through Ash Flat, in Sharp County, to the town of Hardy, intersecting the Mammoth Spring road at Hardy; also a lateral beginning at a point on the Mammoth Spring road near Mammoth Spring and thence east to the town or village of

Wirth; also beginning at the village of Hill Top, and thence southwesterly to Williford and Sitka, and thence to Poughkeepsie, in Sharp County, this being a lateral intersecting the Mammoth Spring road at Williford. These roads are treated as a single improvement, and they connect up with each other so as to be treated as such.

Section 3 of the statute makes it the duty of the commissioners to ''improve roads herein described by grading, drainage and surfacing them, or part thereof, in such manner and with such material as the plans of the district may designate, and by straightening and widening them, and to construct bridges and culverts as needed on said road, according to the plans that may be approved by the county courts of the respective counties in which said road or parts thereof is situated.''

Section 7 provides for the filing of the plans of the proposed improvement with the respective county courts, together with an estimate of the cost of the work to be done in each county.

Section 10 provides that ''if said plans contemplate that the line of any public road to be improved shall be straightened or changed and the county court of the county in which the changed part is situated approve the same, this shall constitute a laying out by the county court of the said road as changed.'' The section further provides that, if additional lands are taken in laying out and constructing the new road caused by the change of route, damages shall be paid, and provision for notice to the affected landowners is made.

The commissioners of the district were duly appointed by the respective county courts, and, after effecting an organization, they entered into a contract with appellant to do the engineering work, both preliminary and permanent, and, pursuant to this contract, appellant started a preliminary survey, which was practically completed, though the work was stopped before the plans were made out. During the progress of the work of making the preliminary survey much opposition was

developed, and it was determined by the commissioners that it would be impracticable to construct the road, so the scheme was abandoned, and appellant instituted this action against the district in the chancery court of Sharp County to recover on the *quantum meruit* for services performed in making the preliminary survey. He alleged in his complaint that, in making the survey, he incurred an actual expense of $6,343.09, and that $3,000 would be a reasonable compensation for his own services. The district answered, denying that the services performed by appellant were of any value to the district, and alleging that the survey made was along a route not specified and authorized by the statute. There was a trial before the chancery court, which resulted in a decree dismissing appellant's complaint for want of equity.

There is a conflict in the testimony, which it becomes necessary to reconcile, and in doing so it is our duty to leave the findings of the chancellor undisturbed unless discovered to be against the preponderance of the evidence.

It appears from the testimony that the public road described in the statute begins at the town of Mammoth Spring, on the west or south side of Spring River, and runs down the river for about a mile and a-half or two miles, and then crosses the river by a concrete bridge, thence approximately following the line of the St. Louis-San Francisco Railway Company down the east or north side of Spring River to the town of Hardy, and thence, partly on that side of the river, to the town of Williford and on to the town of Ravenden, in Lawrence County. It is also conceded that appellant, in surveying for the construction of the improvement, changed the route so as to cross Spring River near Mammoth Spring, instead of following the line of the old road down on the south or west side, and that, from Hardy to Williford, he crossed back to the south or west side of the road, instead of following the old line on the north or east side to Williford. The road from Hardy, on Spring River, over to Mount Olive, on White River, runs through the towns mentioned

in the statute, and the evidence shows that the line surveyed by appellant also ran through those towns, but it is conceded that the survey did not follow the old road, and, on the contrary, that it frequently departed from the old route for the purpose of straightening the line and lessening the distance. There is, as before stated, a conflict in the testimony as to the extent of these changes. The same can be said with respect to the line of road beginning at Hill Top and intersecting the Mammoth Spring road at Williford and running southwesterly down to Poughkeepsie. The survey made by appellant followed the route with respect to the termini and the intervening points mentioned in the statute, but the line was frequently changed by the new survey, and did not follow the old route.

The conflict in the views held by the judges of this court, both with respect to the facts and the law of the case, is such that it becomes necessary to determine the net result of these views. It is the opinion of Justices Wood and Hart that the statute creating the district does not authorize the commissioners to make any changes in the road other than those that are deemed immaterial. Justices Smith and Humphreys and the writer are of the opinion that the power of the commissioners is not thus limited by the statute, but that, on the contrary, the board of commissioners may, with the approving action of the county court, make material changes in the route, if those changes are not such as to constitute an entire departure from the improvement contemplated by the statute. They are of the opinion, further, that an engineer performing, in good faith, services in making a preliminary survey and plans authorized by the statute, is entitled to compensation, even though that survey may never be approved by the county court. It is necessary for the survey to be made in order for the county court to determine whether or not the route thus surveyed will be approved, and, if the services are performed in good faith, the fact that the time for approval by the county court is never reached, or, if the county court should, for good

cause, not approve the change in the route, the engineer nevertheless is entitled to his compensation. The test is whether or not the services were performed in good faith and are reasonably calculated to be of resulting benefit in the event of the construction of the improvement.

These views of the majority, of course, constitute, to that extent, the law of the case. There is, however, a further difference in the views of those just referred to as the majority, in that Mr. Justice SMITH is of the opinion that, according to the facts of this case, in making the survey there was a complete departure from the scheme of improvement authorized by the statute, and the views of Mr. Justice HUMPHREYS and the writer are to the contrary. They (the writer and Mr. Justice HUMPHREYS) are of the opinion that, since the survey ran between each of the stated termini and through the towns and villages mentioned in the statute, the scheme was not departed from, even though material changes were made.

It will be observed from the language of the statute that the lawmakers intended to authorize material changes, for the reason that the approval of the county court is required. This court has decided that immaterial changes may be made without the authority of the county court (*Wimberly* v. *Road Imp. Dist.,* 161 Ark. 79), and, if only immaterial changes had been contemplated by the lawmakers, it is not reasonable to suppose that they would have required the approval of the county court. It will be observed that § 3 of the statute uses the words "straightening and widening" in referring to the roads to be improved, but § 10, in referring to the approval of the county court, uses the word "straightened or changed," and provides that, where additional lands are taken "in laying out and constructing the new road caused by the change of route," damages shall be paid, etc. Now, all of this shows clearly to our minds that the lawmakers contemplated the making of material changes, and the only limitation placed upon the power was that it should be subject to the approval of the county court,

for this was a recognition of the county court's jurisdiction in laying out or changing public roads. What the Legislature contemplated, in the opinion of Mr. Justice Humphreys and the writer, was that the route of the road to be constructed, whether according to the line of the old road or by a changed route made by the commissioners, should be designated by the respective termini and the intervening points, and that a route surveyed between those points, even though there was a material departure from the line of the old road, fell within the authority of the statute.

Justices Wood and Smith have reached the conclusion, from a consideration of the facts of the case, that the whole line surveyed by appellant constituted such a complete departure from the route indicated in the statute that it was, in effect, a wholly different project, and was unauthorized, and that appellant is not entitled to any compensation for his services in making the survey. They are of the opinion that the facts of the case bring it within the decision of this court in the case of *Kern v. Booneville and Sanatorium Highway Dist.*, 154 Ark. 107. Their conclusion is, on the whole case, that the decree of the chancery court should be affirmed. Mr. Justice Humphreys and the writer are of the opinion that the testimony in the case shows that, under their view of the law as expressed above and of the facts as they find them to be, the survey made by appellant was done in good faith and within the authority conferred by the statute, even though there were material changes in the route, and that the case of *Kern v. Booneville & Sanatorium Highway District, supra,* does not apply, and that appellant is entitled to compensation for all of his services.

There seems to be no serious conflict in the testimony as to the expenses incurred by appellant in making the survey, or the amount of compensation to which he is entitled. We (Mr. Justice Humphreys and myself) would reverse the case, with directions to enter a decree in favor of appellant. The views of Mr. Justice Hart traverse middle grounds between the extreme views, on

the facts, of Justices Wood and Smith on the one side and Mr. Justice Humphreys and the writer on the other. He (Mr. Justice Hart) is of the opinion that appellant is not entitled to compensation for services rendered in making material changes in the route of the road. He thinks that the survey was made in good faith, and that the case of *Kern* v. *Booneville & Sanatorium Highway District, supra,* does not apply, but that, in so far as material changes were made, it was not authorized by the statute, and for that reason there should be no compensation. He is of the opinion, however, that the survey of parts of the road made only immaterial changes so as to widen or straighten the road, and that, since the survey was made in good faith, appellant is entitled to recover for those services on the *quantum meruit*. Those conclusions of fact reached by Mr. Justice Hart, since they occupy middle ground between the other extreme views, necessarily control the decision of this case. There was not such a separation, however, in the testimony adduced below to afford means for determining what amount of compensation appellant is entitled to under the rule resulting from our conflicting views. There being such a conflict in the views of the justices as to the facts of the case, we deem it unnecessary to state them here in detail. There are separate opinions stating in their own language the views of the respective justices, and, since the opinion of Mr. Justice Hart will be controlling, it will serve as a guide to the trial court in the further proceedings.

The decree is therefore reversed, and the cause remanded, with directions to the chancery court to hear further testimony, if offered by either party, and to determine therefrom the amount of compensation to which appellant may be found to be entitled on the *quantum meruit* basis, for surveying such parts of the route where the changes from the old route were not material.

Hart, J., (concurring). The act creating the highway district in question provides that it is formed for the purpose of improving certain public roads, which are described as running from one town to another, or from

one town through other towns, to the place where the roads end. This indicates that it was the intention of the Legislature to improve the existing public roads.

Another section of the act provides that it is the duty of the commissioners to improve the roads herein described by grading, draining, and surfacing them with such material as the plans for the district may designate, and by straightening and widening them.

Another section of the act provides that, if the plans contemplate that the line of any public road to be improved shall be straightened or changed, and the county court of the county in which the changed part is situated approves the same, this will constitute a laying out by the county court of the road as changed. When the act is read from its four corners, I do not think that it contemplates radical or material changes in the public roads to be improved. I am of the opinion that it was the intention of the Legislature to give the commissioners the authority to improve public roads already laid out, and that it only contemplates making immaterial changes in them or straightening or widening them. *Rayder* v. *Warrick*, 133 Ark. 491; *Hout* v. *Harvey*, 135 Ark. 102; *Pritchett* v. *Road Imp. Dist.*, 142 Ark. 509; and *Nunes* v. *Coyle*, 148 Ark. 365.

Now the testimony in this case shows that, in making the preliminary survey on the road from Hardy to Williford, the engineer made a material change. The road from Hardy to Williford is on the north side of Spring River, and the engineer made a survey on the south side of Spring River, where there was no public road.

The act gave the commissioners the authority to employ engineers to make a preliminary survey of the roads to be improved, but it gave them no authority, in my judgment, to lay out new roads on wholly or materially different routes. Therefore the engineer could not charge the district with the costs of making the preliminary survey on the south side of Spring River from Hardy to Williford, or in other parts of the road where the change was material.

It is conceded that the engineer was only entitled to recover on a *quantum meruit* basis. While preliminary work must be done and its costs must be met by the landowners, no allowance can be made for a preliminary survey which was unauthorized by the act creating the road district. I do not think, however, that, because the engineer, in making the preliminary survey, exceeded the authority given the commissioners by the act, this should prevent him from recovering for work which he was authorized to do. The preliminary survey is work undertaken by the district to determine whether it is feasible to make the improvement contemplated, and is therefore a necessary incident to the organization of the district. It seems to me that, if the engineer is entitled to recover on a *quantum meruit* basis, the fact that he did work for which he is not entitled to receive pay ought not, in the absence of bad faith, to prevent him from recovering for work which was necessary to be done to determine whether the improvement could be made or not.

As we have already seen, the preliminary survey is work undertaken by the district in order to determine whether or not the proposed improvement can be made under the terms of the act, and its cost is an incident of the organization of the district, and should be borne by a tax on the lands therein. *Thibault* v. *McHaney,* 119 Ark. 188, and *Houck* v. *Little River Drainage Dist.,* 239 U. S. 254.

Section 6 of the act in question gives the commissioners the express power to employ an engineer, to be approved by the State Highway Department, to assist them in the preparation of plans for the improved roads. The engineer is entitled to a reasonable compensation for this survey, and the fact that the commissioners, by mistake, exceeded their powers in making the preliminary survey, ought not to prevent him from recovering a reasonable compensation for services which the commissioners had the authority to employ him to render under the terms of the act.

I do not think that the case of *Kern* v. *Booneville & Sanatorium Highway Dist.*, 154 Ark. 107, is controlling under the facts of this case. There this court said that the chancery court was justified in holding that the engineer knew, before he proceeded far with his work, that the road could not be constructed within the limits of the cost provided in the act, and that, under the circumstances, he acted in bad faith in making a preliminary survey. I do not think that the facts in the case before us warrant any such finding.

The State of Missouri had laid out and improved the highway from Kansas City to a point on the Missouri line near Mammoth Spring. It was intended to make the proposed road in the present case a link or continuation of that highway. Under the act, the commissioners and the engineer, in good faith, thought that they had a right to make material changes in the route of the proposed highway so as to make the plans conform to the requirements of the engineers of the United States Government, in order that they might receive Federal aid. In my judgment the act does not give them the power to make material changes in the existing highway, and, for that reason, the commissioners and the engineer exceeded their authority when they did so. I think that they acted in good faith, however, in the matter, and for this reason the engineer had a right to recover reasonable compensation for making the preliminary survey where no material changes were made in the route.

In determining whether the changes were material or not, within the intention of the Legislature, it is proper to consider the topography of the ground; the fact that a change was being attempted from a system of dirt roads to that of hard surface roads; that motor vehicles have become the chief means of travel, and other surrounding circumstances conducive to the safety of traveling and the proper drainage of the road. This made it necessary to straighten and widen the existing road in order to obtain the most practical route. As above stated, I do not think, however, the Legislature meant to

give the commissioners the power to recommend radical or material changes in the route.

The profiles referred to by the engineer in his testimony are not in the record. Both parties, in my judgment, tried the case on the wrong theory. Inasmuch as, in my judgment, it is very difficult to separate the legal and illegal items, I think it would be better to reverse the decree and remand the cause, with directions to allow either party, if so advised, to take additional testimony to show what would be a reasonable fee or compensation to the engineer, within the meaning of our previous decisions on the subject. In short, I think that the engineer acted in good faith and should, under our previous decisions, be allowed to recover compensation upon a *quantum meruit* for the reasonable value of his services performed within the authority conferred by this act as interpreted in this opinion.

SMITH, J., (dissenting). The testimony developed the fact, as is stated in the concurring opinion of Mr. Justice HART, that the State of Missouri had laid out and improved a highway from Kansas City, in that State, to a point on the Missouri line near Mammoth Spring, in this State, and it is just here that I think the engineer of the district fell into error. He evidently thought it would be a good idea to extend this road as far as possible into this State; but that purpose, however laudable, was not authorized by the act of the General Assembly authorizing the improvement.

The purpose of the act under review was to improve four existing roads, having a total length of 125 miles, running through a mountainous, sparsely settled country, and the roads to be improved were the existing roads at the time of the passage of the act, and the authority conferred was not to build new roads, with designated termini, which should run through certain named towns and villages, but to improve the roads then existing, having the termini named, and which ran through the towns and villages named.

It is my opinion, as stated in the opinion of the Chief Justice, that, subject to the approval of the county court, material changes might have been made in the roads; but I do not agree that the act conferred any such wide discretion in this respect as the engineer undertook to exercise. In my opinion, material changes were to be made only in straightening and improving the existing roads, and there was no intention to confer, even with the approval of the county court, the authority to lay out, practically speaking, new roads.

I do not agree that the good faith of the engineer is the only test to be applied in determining the compensation he may charge the district for his services. He must, of course, have acted in good faith, but even so he cannot charge for services which the act creating the district did not authorize him to perform, however much or however honestly he may have been mistaken.

The commissioners themselves could confer no greater authority upon the engineer than the act which authorized them to employ an engineer conferred on them, and it is my opinion that the engineer wholly misconceived the nature of his employment and the extent of his powers thereunder.

Section 2 of the act designates the roads to be improved, and those were the existing roads, which were to be changed only when change was necessary to straighten or widen them. This section of the act clothed the commissioners "with power and authority to construct any bridges across any of the rivers or streams at or near the point where the said public roads intersect said streams," and the undisputed testimony shows that these bridges were located at crossings of rivers and streams without any reference to the existing crossings of such rivers and streams.

The opinion of the Chief Justice, as well as the concurring opinion of Mr. Justice HART, refer to and describe the road from Mammoth Spring, through Hardy, to Williford, and the road surveyed between

these points is typical of the other three roads. It does begin at Mammoth Spring, and it does run through Hardy, and does terminate at Williford; but that is as much as can be said for it. Certainly, the survey of the engineer did not contemplate the improvement of the existing road which ran from Mammoth Spring, through Hardy. On the contrary, as appears from both of the opinions referred to, the engineer ignored even a river. Equally as little attention was paid to the existing roads in the survey of the other three roads which the district proposed to improve.

It may be admitted that, from an engineering standpoint, good reasons for the changes in the location and route were given. On behalf of the engineer, it was testified that the existing roads were not suitable to become improved highways, and the excuse given for many of the changes made was that excessive grades were eliminated. It was explained that State and Federal aid would not be given an improved road having grades exceeding seven per cent., and that much of the existing roads exceeded that limitation. But many witnesses on behalf of the district testified that these changes involved the acquisition of practically new right-of-way for the roads, and that much damage would be done through obstructed drainage, and much expense would be incurred by reason of the blasting excavations, fillings, and bridges which would be required to construct the new road which was being surveyed.

The county judge of one of the counties testified that he informed the commissioners, while the survey was progressing, that he would not pay or authorize the payment of the damages which would result from the laying out of the new road, and yet the survey continued.

One of the commissioners testified that the board of commissioners gave the engineer no authority or direction to shift the road to the opposite side of the river, nor was the engineer given any authority or direction to deviate from the old roads to any extent; and another

commissioner who corroborated this statement testified that such suggestions as he did make were disregarded. In this connection, it may be said that it was not contended that the road had been shifted to the opposite side of the river for the purpose of straightening or widening it. No such discretion was vested as was here exercised, and the engineer's case would not be bettered had the commissioners themselves directed him to ignore the provisions and purpose of the act and to lay out the kind of road which he, as an engineer, regarded as most desirable.

No attention whatever appears to have been paid to the requirement of the act that the bridges of the district should be constructed "at or near the point where the said public roads intersect said streams." This language, of course, means where the roads existing at the time of the passage of the act intersected said streams.

In the recent case of *Plum Bayou Levee District* v. *Pocket Cypress Drainage Dist. No. 1*, 165 Ark. 576, legislative authorization was given for a drainage district to cross the line of the levee of a levee district, and the appeal involved a suitable place for the drainage district to intersect the levee. The act gave the privilege of crossing at or near a certain mile-post. In construing the use of the word "near," there used, we said: "Of course, the use of the word 'near' gives a little latitude, but it clearly means that the point of passage should be approximately at the mile-post between the designated sections."

So here I think the language of the act set out above was a legislative direction showing clearly that the roads to be improved were the existing roads.

The court below made the following finding of fact:

"The court finds further that under the provisions of said act it was the purpose and intention of the General Assembly to improve and repair the existing public roads only, not to construct or build an entirely new

and different road. That the route as surveyed by plaintiff was almost entirely along a new route, and, in order to have used said survey, it would have been necessary to build many bridges over Spring River and other streams, and have purchased right-of-way, and to have built an entirely new road, in some instances miles from the established public road on the opposite side of Spring River from the present road.

"That said survey so made by plaintiff was worthless to the said district, and could not have been used or adopted by the commissioners of the district for the reason that the said special act creating said district did not authorize such departure from or change in the existing roads, and for the further reason that the route surveyed and laid out did not belong to the respective counties, and could not have been used without the exercise of the right of eminent domain and at a great cost to the respective counties, which was not authorized by said act No. 32."

Certainly, this finding of fact is not clearly against the preponderance of the evidence. Many witnesses gave testimony fully supporting this finding. Indeed, as I understand the testimony, the finding is sustained by the undisputed evidence. I copy from appellant's own testimony the following questions and answers: "Q. Then, your survey, as made by your man, was made according to your idea of laying out a new road from Mammoth Spring by way of Hardy, Ash Flat, Franklin, and Melbourne, down to Mount Olive, was it not? A. Well, I don't know whether you would regard it as a new road entirely or not. It was made with the view of improving the old road, but in making the improvement according to the act as we understand it it was practically necessary to construct a new road. Q. And that was your object? A. Yes sir."

Under this testimony and the finding made by the court, the rule announced in *Kern* v. *Booneville Sanatorium Highway Dist.*, 154 Ark. 107, should be applied,

In that case the engineer did complete his preliminary survey, while here that was not done. The testimony of numerous witnesses shows that appellant did not complete the preliminary survey, for he was not permitted to do even this, and the undisputed testimony shows that the chief cause of the dissatisfaction was the apparent attempt to lay out what were regarded as practically new roads.

In the Kern case the estimate of cost far exceeded the particular benefits, though the point of assessing benefits was never reached. Here, of course, no benefits were assessed because there was not even a preliminary survey; but it is equally as certain in this case, as it was in that, that the roads could not have been built within the limitation upon the cost imposed by the act. Section 14 of the act limited the cost of the improvement, exclusive of interest on borrowed money, to a sum not exceeding thirty per cent. of the value of all the lands and real property in the district as shown by the last county assessment, including railroads.

The engineer was proposing to construct four practically new roads, which would have had no grades exceeding seven per cent., through a sparsely settled country, having high hills and deep valleys, and which is largely undeveloped, and that this could not be done at a cost not exceeding thirty per cent. of the assessed value is a fact which is as certain, although no betterments were ever assessed, as that the Booneville road could not have been built within the estimated and authorized cost of that road; and I think it is as certain here, as it was there, that the surveys of the engineer could not have been of any value to the district, because in this case, as in that, the cost of the road would have exceeded the limitation upon the cost, the limitation in that case being imposed by the commissioners themselves, while in the instant case the limitation was imposed by the act creating the district. The doctrine of that case should be applied here for the additional reason, which I have

shown, that the engineer surveyed roads which the district was not authorized to build at all, whereas Kern did at least survey a road which that district was authorized to improve, and compensation was denied him only because the cost was too great.

In my opinion, appellant should have compensation for all the work he did, or should be denied any compensation. His work was authorized or it was unauthorized, and his plans could have been used by the district if he had completed them, or they were worthless. The route he was surveying could have been adopted, or it must have been rejected as being unauthorized by the act creating the district.

Mr. Justice WOOD concurs in what is herein said, except that he does not think the act conferred authority to make any material changes in the existing roads; but as we both agree that the act authorized no such disregard of the legislative purpose as is shown by the testimony in this case, we are of the opinion that the decree of the lower court should be affirmed.