SIMS *v.* AHRENS.

## Opinion delivered January 19, 1925.

1.  TAXATION—INCOME TAX LAW.—Acts 1923, No. 345, subjecting all
    persons and corporations to a gross income tax, is void as in
    effect a tax upon interstate commerce, and as operating in a dis-
    criminatory and arbitrary manner.

2.  TAXATION—INCOME TAX LAW.—An income tax is neither a prop-
    erty tax nor an occupation tax, within the provisions of art. 16,
    § 5, of the Constitution.

3.  TAXATION—POWER OF LEGISLATURE TO CLASSIFY PROPERTY.—The
    Legislature may select the subjects of taxes and classify them
    under the Constitution, and may impose taxes on any subject in
    proportion to the benefits and protection which such subject
    receives.

4.  TAXATION—RULE OF UNIFORMITY.—The rule of uniformity does
    not require that all subjects be taxed, nor taxed alike, but is
    complied with when the tax is levied equally and uniformly on
    all subjects of the same class and kind.

5.  TAXATION—VALIDITY OF INCOME TAX LAW.—It is within the discre-
    tion of the Legislature to pass a properly classified net income
    tax law.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau,* Chancellor; affirmed.

*J. S. Utley,* Attorney General, and *Wm. T. Ham-
mock,* Assistant, for appellant.

The income tax designated in the act is separable
from other taxes such as per capita, property, occupa-
tion, franchise and other privilege taxes. All these other
types or methods of taxation have been sustained by our
courts, notwithstanding each of them touches upon prop-
erty rights at some point, and in the payment constitutes
a burden directly or indirectly upon the property of the
taxpayer. The fact that income may have its source
in rents from real estate, interest from money loaned,
profits from business, or wages from employment does
not stamp a tax on incomes as a property tax. 44 Ark.
134; 93 Ark. 613; 98 Ark. 299; 102 Ark. 314; 26 Ark.
523; 27 Ark. 625; 56 Ark. 251; 69 Ark. 555; 77 Ark. 321;

84 Ark. 470; 110 Ark. 204; 117 Ark. 54; 123 Ark. 68; 34 Ark. 166; 38 Ark. 514; 106 Ark. 321; 235 U. S. 350.

The contention that the tax is void because laid upon gross receipts of natural persons from occupations that are of common right, was squarely met and held adversely to appellees in *Fort Smith* v. *Scruggs,* 70 Ark. 554, and again in *Davis* v. *Hot Springs,* 141 Ark. 525-6-9. The same cases decide adversely to the contention that the tax is laid as a property tax in violation of the *ad valorem* clause of the Constitution. But even if the income tax is found to be a property tax, it does no violence to that clause as alleged, because the tax is laid upon the value of the income and at a uniform rate. See Acts 1923, p. 282, §1.

The income tax is not an unjust discrimination because laid upon individuals and not upon corporations. We insist that it is an excise laid upon the privilege of enjoying and appropriating the proceeds of property, business and wages; and this being true, it falls within the oft-announced principle that the Legislature may classify for purposes of taxation, and there is no discrimination where the tax applies equally to all coming within the class. 93 Ark. 612; § 1 of the act, *supra*; 70 Ark. 549; 85 Ark. 464; 217 U. S. 79; 102 Ark. 131; 153 Ark. 114.

The contention that the act fixes a double liability and holds both the taxpayers and the withholding agent for the payment of accruing tax is untenable in the light of the provisions of §§ 4 and 5 of the act. As to the power of the State to impose upon employers the burden of reporting, withholding and paying over tax, as prescribed in the act, see 153 Ark. 125; 76 Ark. U. S. 353; 167 U. S. 461; 217 U. S. 443; 231; U. S. 120; *Id.* 383; 232 U. S. 58. The tax laid is not a property tax but a tax laid upon incomes. It is clearly within the power of the Legislature because not prohibited by the Constitution. 100 Ark. 549; § 23, art. 2, Constitution; 99 Ark. 1; *Id.* 100; 93 Ark. 336; 112 Ark. 342; 43 Ark. 527; 86 Tenn. 134.

*J. C. Marshall,* for appellant.

This tax, in so far as it is not laid on the use of property, must be conceded to be a privilege tax. A tax on gross receipts such as this is necessarily a privilege tax, and the amount of such receipts is the measure of the value of the privilege. 31 L. R. A. 41; 45 Md. 361; 80 Ala. 99, 60 Am. Rep. 99; 35 S. E. 73; C. & M. Digest, §§ 9967-8; 119 Ark. 314; 160 Ark. 17. The effect and result must be looked to, and not the name, to determine the character of the tax. 128 Ark. 505; 153 Ark. 114. The Constitution of 1874, art. 16, § 2, limits taxation for State purposes (1) to taxes on property, and (2) to taxes on privileges. This clause was taken almost *verbatim* from the Constitution of 1836, and, under both, it has been uniformly held that the provision for taxing privileges limits the State only, not its subdivisions, such as cities and towns. 2 Ark. 291; 13 Ark. 752; 44 Ark. 134; 58 Ark. 609; 153 Ark. 114. From these cases it is seen that occupations which are of common right are not privileges, and cannot be taxed by the State, because this clause by limiting the State tax to privileges necessarily excludes taxes on all occupations which are not privileges. Since the act taxes all pursuits or means of earning money of every kind, all must be privileges, or otherwise the act is void. 160 Ark. 17; 70 Ark. 529; 153 Ark. 114. Since, also, all occupations are here sought to be taxed by the State, and the tax on all such occupations as are not privileges is void, the entire act is void, because the void and the valid parts cannot be separated. The word "privilege," as applied to occupations. is limited to those which are subject to police regulation. 27 Ark. 629; 43 Ark. 82. A common-law right is not the creature of a license law. 61 Ark. 486. A license implying a privilege cannot possibly exist with reference to something which is right, free and open to all. 49 L. R. A. (Ill.) 412. See also 107 U. S. 365. The right to follow any of the common occupations of life or to earn one's living in any innocent vocation without let or hindrance is an inalienable right, secured to all those living under

our form of government by the liberty, property and happiness clauses of our national and State constitutions. 170 Pac. 1; 111 U. S. 757; 70 L. R. A. 724; 34 L. R. A. (N. S.) 894; 7 R. C. L. 55; 56 L. R. A. 558; 24 *Id.* 195; 48 *Id.* 265; 27 L. R. A. (N. S.) 357; 34 *Id.* 433. The tax, in so far as it is levied on receipts from the use of property, such as rents on realty or personalty, or interest on money loaned, is a property tax, and void (a) because it is levied only on natural persons; (b) it is not levied on an *ad valorem* basis, and (c) it carries the amount of the tax beyond the constitutional limits for property taxes. 153 Ark. 114; 2 Ark. 291; 157 U. S. 429; 158 U. S. 601; 72 So. 891; (Miss.) 112 Miss. 383. The act is void because it discriminates against natural persons by exempting corporations. 85 Ark. 509, and cases cited; Judge Wood's discussion of the discrimination feature in the Severance Tax case, 160 Ark. 17.

*Archer Wheatley, Basil Baker, Arthur L. Adams* and *Horace Sloan,* filed a brief as *amici curiae.*

SMITH, J. This appeal involves the constitutionality of act 345 of the Acts of the General Assembly of 1923. General Acts 1923, p. 282.

The title to this act is as follows: "An act to be entitled, an act to levy a sale or gross income tax of one-tenth of one per centum, or one dollar ($1) on each one thousand ($1,000) dollars, on the gross incomes of every resident of the State of Arkansas and by natural persons not residents of this State who shall have received one thousand dollars or more per annum from and after March 31, 1923, to be levied and collected annually, beginning April 1, 1924, for the sole use and benefit of the public schools of Arkansas, and for other purposes."

A portion of § 1 of this act reads as follows: "A tax is hereby imposed upon every resident of the State of Arkansas, which shall be levied, collected and paid annually upon and with respect to his or her entire gross income as herein defined, at rates as follows: One-tenth of one per centum, or one dollar on each one thousand dollars, and at that rate of one-tenth of one per cent. on

each and every dollar over and above one thousand dollars from the gross income from all property owned and from every business, trade, profession or occupation carried on in this State, and a like tax is hereby imposed and shall be levied and collected and paid annually to the State Comptroller of this State by natural persons not residents of this State.''

Section 2 of the act defines the term ''gross income,'' as employed in § 1 of the act, as follows: ''The term 'gross income' includes gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit, or gains, or profits, and income derived from any source whatever, including gains or profits or incomes derived through estates or trusts by the beneficiaries thereof, whether as distributed or as distributable shares, income from property acquired by gift, bequest, devise or descent. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer.''

The appellees in this case, who were the plaintiffs below, are residents and citizens of this State, and have earned incomes upon which they will be required to pay taxes if the act under review is valid. The income of one plaintiff had been earned as a manager of an insurance company; that of another from rents received on real estate; a third earned wages as a locomotive engineer; while the fourth had derived profits from his business as a merchant, and these plaintiffs seek by this suit to enjoin the State Comptroller from attempting to enforce the payment of the tax imposed by act 345 on their respective incomes. The court below held the act unconstitutional, and granted the relief prayed, and this appeal is prosecuted to reverse that decree.

It is quite obvious that the incomes of the plaintiffs are subject to the tax, if the act itself is valid. The act is all-comprehending. It includes gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid. It includes income derived from professions, vocations, trades, business, commerce, or sales, or dealings in property whether real or personal, growing out of the ownership or use of or interest in such property. It includes also incomes from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits. And, after thus including all apparent sources of income, there was added, out of a superabundance of caution that no source of income might be overlooked, the inclusive words, ''and income derived from any source whatever.''

The tax authorized by this act, whatever else may be said of it, is both an occupation tax and an income tax, because income derived from all pursuits or callings are taxed, except certain exempted incomes enumerated in § 4 of the act, and which need not be recited here.

It is not a privilege tax, and cannot be sustained as such, because no attempt is made to distinguish between occupations which are of common right and those which might be designated as privileges, and taxed as such. All are alike subject to the tax.

The act makes no attempt to restrict the imposition of the tax to such occupations as might be taxed as privileges, but imposes the tax as a unit on the entire income of every person subject to its provisions, without regard to the source of the income, and the act must therefore stand or fall in its entirety, as its provisions are not separable. The act proposes a scheme of taxation which is either valid or void, as no separation of the sources of the income was contemplated by the Legislature. *Oliver v. Southern Trust Co.,* 138 Ark. 389; *Nixon* v. *Allen,* 150 Ark. 244.

The tax in question is a State tax, and is levied for the use and benefit of the public schools of the State, and

the first question presented is whether the State can levy such a tax for any State purpose. If the conclusion is reached that such a tax cannot be levied for State purposes, it will be unnecessary to consider any of the other objections interposed to the act.

In approaching the consideration of this question, it may be said that we do not have to search the Constitution for express authority to levy the tax. The power to levy it exists an an inherent right, unless the Constitution has denied the right to the State to levy taxes of this character.

The question is by no means new in this State. The question arose very early in the history of the State, and was first decided in the case of *Stevens and Woods* v. *State,* 2 Ark. 291, and was considered in other early cases. We do not stop to review these cases, but will first consider the case of *Baker* v. *State,* 44 Ark. 134, because it was the first case to arise under our present Constitution, and these earlier cases were there reviewed.

In the case of *Baker* v. *State, supra,* the appellant had been indicted for "unlawfully engaging in business as an agent for the sale of sewing machines" without obtaining the licence required by the act which he was charged with having violated. It was pointed out in the Baker case that there was some apparent conflct in the early cases on this subject, and, on that account, the court was urged to take the subject up anew and consider it *de novo,* but the court declined to do this for the reason, there stated, that this confusion had been recognized and considered in the case of *Washington* v. *State,* 13 Ark. 752, and the earlier cases were there reconciled. Chief Justice COCKRILL, in delivering the opinion in the Baker case, said: "In an attempt to extricate itself from this difficulty, the court held (in the Washington case) that there was no restraint upon the power of the Legislature to authorize counties and towns to regulate or tax callings and pursuits, but there was a restriction in that regard upon legislation for the purpose of raising

a State revenue. This distinction has never been questioned by this court, but has been recognized and approved from time to time. *McGehee* v. *Mathis,* 21 Ark. 40; *Straub* v. *Gordon,* 27 *Id.* 625; *Barton* v. *Little Rock,* 33 *Id.* 442; *Little Rock* v. *Board, etc.,* 42 *Id.* 160.''

After recognizing the Washington case as having definitely decided the question that the Legislature might authorize counties and towns to regulate or tax callings or pursuits for the purpose of raising revenue, but that there was a restriction in that regard upon legislation for the purpose of raising State revenue, Chief Justice COCKRILL took occasion to say that the decisions reviewed did not limit the power of legislation for State purposes to the taxing of such privileges as were technically known as such at the common law, that is to say, that the Legislature has a discretion to adjudge what are privileges, and such callings and pursuits as may be classed as privileges may be taxed for State purposes, but the court there clearly decided that, unless a particular calling or pursuit might be classed as a privilege, it was not subject to taxation for State purposes.

Upon the authority of the case of *Baker* v. *State, supra,* this court has consistently held that cities and towns may, when so authorized by the Legislature, tax callings and pursuits to raise revenue for municipal purposes, such taxes being commonly designated as occupation taxes. Among other cases in which it was so held are: *Little Rock* v. *Prather,* 46 Ark. 471; *Fort Smith* v. *Scruggs,* 70 Ark. 549; *LaPrairie* v. *Hot Springs,* 124 Ark. 346; *Davis* v. *Hot Springs,* 141 Ark. 521; *Pine Bluff Transfer Co.* v. *Nichol,* 140 Ark. 130.

And, upon the authority of *Baker* v. *State, supra,* this court has, with equal consistency, held that the State could not impose such taxes for State purposes. Among the cases so holding are: *State* v. *Washmood,* 58 Ark. 609; *Standard Oil Co.* v. *Brodie,* 153 Ark. 114; *State* v. *Handlin,* 100 Ark. 175.

The reason for the distinction uniformly drawn by this court for upholding the tax in one case and for

declaring it invalid in the other, goes back to the Washinton case, *supra,* where the apparent conflict in the still earlier cases was reconciled, as Judge COCKRILL said in the Baker case, and the reason upon which the reconciliation of the cases was made was simply this: The Constitution had taken away from the State the right to tax occupations which are of common right for State purposes, and had left the State the right to tax only those callings or pursuits which might be classed as privileges, whereas no such limitation had been placed against the cities and towns.

The State might tax callings and occupations which are of common right, had the Constitution not denied the State this power; but the Legislature has the right to confer this power on the cities and towns of the State, because the right to do so has not been withheld by the Constitution.

It was just here that this court, in the Washington case, speaking through WATKINS, Chief Justice, reconciled the apparent conflict in the earlier cases. The decision in the Washington case was rendered while the State's first Constitution—that of 1836—was in force.

Section 2 of the article on revenue in the Constitution of 1836 reads as follows: "All property subject to taxation shall be taxed according to its value—that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value. Provided, the General Assembly shall have power to tax merchants, hawkers, peddlers and privileges in such manner as may, from time to time, be prescribed by law."

It is quite obvious that this is substantially the same as § 5, of article 16, of our present Constitution, except that § 5, of article 16, of the present Constitution, after declaring the basis of taxation and the privileges which might be taxed, also enumerated the classes of property which should be exempt from taxation. The por-

tion of § 5, of article 16, of the present Constitution relevant to the decision of the question here under consideration reads as follows: "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value, provided the General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper."

A comparison of this section with the one quoted from the Constitution of 1836 shows that one was taken from the other, the difference being that the Constitution of 1836 included merchants, whereas the Constitution of 1874 does not include merchants; and the Constitution of 1836 did not include ferries or exhibitions, whereas the Constitution of 1874 does include them.

These are the provisions of the Constitution of 1836 which the court had under consideration when Chief Justice WATKINS said, for the court, in the Washington case: "But the imposition of taxes, granting of licenses by counties or towns, may be authorized or regulated by legislation, and that legislation is not necessarily controlled or limited by the provisions of the Constitution in regard to State revenues."

This conclusion resulted from the rule of construction first adopted by this court in the case of *State* v. *Ashley,* 1 Ark. 513, and since continuously followed by this court in the construction both of the Constitution and of statutes, that the expression of one thing in the Constitution is the exclusion of another, and, as was also said in *Colby* v. *Lawson,* 5 Ark. 303, quoting from *State* v. *Ashley, supra,* there are two ways of imposing a constitutional restriction, viz., by express negation, and by affirmation which implies a negation.

The Constitution defined what might be taxed by the State, and thus excluded what was not enumerated. No

such limitation was imposed on the right to tax for county or municipal purposes, and the Legislature may therefore confer this right on the counties and municipalities of the State.

The question here involved was again considered by this court in the case of *State* v. *Washmood,* 58 Ark. 609, where Chief Justice BUNN, speaking for a unanimous court, said: "If the tax was intended to be a tax levied upon the association or companies represented by the agents named, the question of the validity of the section would, at least, be an open one, but one which it is unnecessary for us to discuss in this connection. If, however, the intention of the Legislature, in enacting said § 5591, was to impose a tax upon the agent therein named, the tax would be an occupation tax, and, being a State tax, as expressed, it would be in violation of the Constitution of the State, as has been settled by numerous decisions of the court (Citing cases)."

The court then proceeded to consider whether the tax there sought to be enforced had been imposed upon the associations and companies for the privilege of carrying on their business in the State, or was intended as a tax upon the agents of such associations and companies, and, having reached the conclusion that the tax which the appellant in that case was resisting was not a tax upon the right of the companies to carry on their business in this State, but upon the agent of the company, the court said: "It was therefore an occupation tax, and, being a State tax also, the section authorizing it is in conflict with the Constitution."

In the case of *Standard Oil Co. of Louisiana* v. *Brodie,* 153 Ark. 114, the principles involved in this case were again under consideration. In that case a tax had been imposed on the sale of gasoline, and we there said: "It is conceded in all quarters that, if the imposition (of the tax on gasoline) is, in effect, a property tax, it is void." The tax was upheld. and in doing so we there further said: "It is easy to discover in the language (of the act) an intention on the part of the law-

makers to impose a tax, not on property, but on a privilege, so as to bring the enactment within constitutional limits.    The tax is not imposed on the sale or purchase of gasoline, nor on the gasoline itself, nor even on the use of the gasoline.    On the contrary, the final and essential element in the imposition of the tax is that the gasoline purchased must be used in propelling a certain kind of vehicle over the public highways.    In the final analysis of this language it comes down to the point that the thing which is really taxed is the use of the vehicle of the character described upon the public highway, and the extent of the use is measured by the quantity of fuel consumed, and the tax is imposed according to the extent of the use as thus measured."

In the Brodie case we again reviewed the Washington and the Baker cases, *supra,* and of the Washington case we there said: "The substance of that decision is that the constitutional provision mentioned is a restriction upon the power of taxation of privileges, and that it does not authorize taxation upon a privilege which was a common right of every citizen" for State purposes.

And upon the review of the Baker case we there said: "We understand the effect of this decision to be that the restriction is not to the privileges specifically mentioned in the Constitution, nor privileges which were 'technically known as such at the common law,' but that the restriction relates merely to privileges which were matters of common right.    This being true, there is nothing in the provision of the Constitution referred to which prohibits taxation for State purposes of the use of the public roads. While the public highways are for the common use of all, they belong to the public, and it is within the power of the Legislature either to regulate or to tax the privilege of using them.    The power was declared in express terms by Judge Riddick in the Scruggs case, *supra.*"

These decisions apparently settled the law as definitely as repeated decisions of the same question can settle anything, that the State cannot tax, for revenue pur-

poses, occupations which are of common right; but it is said that the case of *Floyd* v. *Miller Lumber Co.*, 160 Ark. 17, unsettled those decisions and gave a new interpretation to the section of the Constitution quoted above. Has this been done?

It may well be said that the decision in the Floyd case is somewhat anomalous, but the apparent anomaly results from the fact that the justices participating in the decisions of the case entertained views which were conflicting and which they were unable to reconcile. Such a result is always unfortunate, but is not always avoidable, and there are a number of such cases in our own reports as well as in those of all other appellate courts. A recent example of this kind is the case of *Mashburn* v. *North Ark. Road Imp. Dist. No. 3,* 167 Ark. 58.

There were four opinions in the Floyd case, one by Justice HUMPHREYS, another by the CHIEF JUSTICE, in which this writer concurred, a third by Justice HART, and a dissenting opinion by Justice WOOD.

These opinions expressed views which were so conflicting that they could not be reconciled, and it takes a consideration of them all to determine what was decided in that case. It may be said that the opinion was a composite one, and, to extract the points decided, it is necessary to determine what points were agreed upon for the different reasons expressed by the respective judges. The only point expressly decided by a constitutional majority of the court was that the tax—a severance tax —was not a property tax.

The opinion delivered by Justice HUMPHREYS was a sweeping one, and the effect of his view was that the State could tax any occupation which the Legislature saw fit to make taxable. He applied to such tax the rule announced by Justice RIDDICK for this court in the case of *Fort Smith* v. *Scruggs,* 70 Ark. 549, and it must be conceded that, under his view, a fair income tax would be constitutional. But that view was not accepted by the majority of the court.

In the opinion of the CHIEF JUSTICE he reviewed the decisions of this court in the cases of *Washington* v. *State, Baker* v. *State, State* v. *Washmood,* and *Standard Oil Co.* v. *Brodie,* and the review of these cases was summarized by him as follows: "The effect of these decisions undoubtedly is that the State cannot tax occupations generally, but must find its power to tax outside of this restriction. The power was found in the Baker case and in the gasoline case in the right to tax the franchise of corporations as a privilege tax, and to tax the use of public highways. Whether or not other exceptions outside of the constitutional restriction can be found remains to be seen in the future. I am unable to discover any ground for taking the operation of this statute, as applied to individuals, out of the restrictions prescribed in the Constitution."

After thus declaring himself, the CHIEF JUSTICE took up the interpretation of the Scruggs case as announced in the opinion of Justice HUMPHREYS, and said: "The opinion of Judge RIDDICK in *Fort Smith* v. *Scruggs,* 70 Ark. 549, affords no support to the view that the Legislature can impose, for State revenue purposes, a tax on occupations. That was a case where the tax was imposed by a municipality, and it is undisputed that the State may delegate to counties and municipalities the power to levy any tax not prohibited by the Constitution. *Baker* v. *State, supra.* The business of severing timber or minerals from the soil for commercial purposes is purely an occupation and the State cannot tax it as against individuals. Timber and minerals attached to the soil are individual property, as much so as anything else, and the business of severing for commercial purposes is a lawful business, of the pursuit of which no individual can be deprived. Therefore it falls within the restriction found in the Constitution. *Penn. Coal Co.* v. *Mahon,* 260 U. S. 393."

After announcing this view of the law, the CHIEF JUSTICE expressed the opinion that the statute there under review could be upheld against corporations as

being in the nature of a tax on the franchise of the corporations engaged in the occupations there taxed.

Justice HART, for reasons which he there fully stated, and which need not be recopied here, reached the conclusion that the tax was valid against both individuals and corporations. He stated that, through the development of a country, occupations which had been of common right might cease to be such and might become proper subjects for regulation by the State in the exercise of its police power, and announced his final conclusion in the following language: "Upon further consideration of the case, upon rehearing, I have reached the conclusion that the occupations taxed in the act may be termed privileges under the common law and taxed as such under our Constitution. There has been no precise limit to the police power of the State, as construed by this court."

Had the entire court reached the view announced by Justice HART, in summing up his views, the decision would have been a unanimous one, and most of what was said by the various judges would have been *obiter*, as there was, and is, no difference of opinion about the right of the State to tax privileges for State purposes; the conflict of opinion arose over the question whether the business of severing products from the soil constituted a privilege.

In his dissenting opinion, Justice WOOD recited that in certain States it had been held that "a privilege is whatever business, pursuit, occupation or vocation affecting the public the Legislature chooses to declare and tax as such." After mentioning cases so holding, he proceeded to say: "Our court, from a very early period in its history, has taken a different view, by holding that it is not within the power of the Legislature, under our Constitution, to declare and tax as a privilege, for State revenue, those pursuits and occupations which every one may follow as a matter of common right. The doctrine of our court is that these pursuits and occupations which are matters of common right cannot be taxed

as privileges for State revenue. It is within the power of the Legislature, under our Constitution, to authorize counties and towns to regulate or tax callings and pursuits, but this cannot be done by towns or counties for the purpose of raising State revenue, nor by the Legislature itself for that purpose. Of course, if pursuits or occupations which are matters of common right are conducted in a manner which injuriously affects the public interest, they may be required to pay a license fee for purposes of regulation under the police power. See *Stevens v. State,* 2 Ark. 291; *Gibson* v. *Pulaski County,* 2 Ark. 309; *Washington* v. *State,* 13 Ark. 752; *McGehee* v. *Mathis,* 21 Ark. 40; *Straub* v. *Gordon,* 27 Ark. 625; *Barton* v. *Little Rock,* 33 Ark. 442; *Little Rock* v. *Board.* 42 Ark. 160; *Baker* v. *State,* 44 Ark. 134; *State* v. *Washmood,* 58 Ark. 609. Under the doctrine of *stare decisis,* these cases have become the settled law of this State, and, until they are overruled, which up to this hour has not been done, this court cannot consistently hold that it is within the power of the Legislature to declare and tax as privileges, for State revenue, pursuits and occupations which are matters of common right. To so hold would be to overrule all these cases, and, if they are to be overruled at all, it should be done expressly, and not by implication. Therefore, even if the tax under review were an occupation tax, it would be unconstitutional and void, under these numerous decisions of our court."

In view of these expressions of opinion appearing in the case of *Floyd* v. *Miller Lumber Co.,* we think it cannot be said that the cases of *Washington* v. *State, Baker* v. *State, State* v. *Washmood,* and *Standard Oil Co.* v. *Brodie, supra,* have been overruled or their authority impaired by the case of *Floyd* v. *Miller Lumber Co.,* and, unless they have been overruled, the State is without power to impose an income tax or an occupation tax for State purpses, and the court below was therefore correct in holding that act unconstitutional, and decree is affirmed.

HART, J. (concurring). Judge HUMPHREYS and myself concur in the judgment because we think that a gross income tax operating upon all persons and corporations alike is unconstitutional.

In *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, it was held that a State tax upon the business of selling goods in interstate commerce measured by a certain percentage of the gross transactions in such commerce was by its necessary effect a tax upon the commerce.

In *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, Ann. Cas. 1918E 748, it was held that the levy and assessment of a general income tax upon the net income of a Wisconsin corporation derived from transactions in interstate commerce is not such a direct burden on interstate commerce as to contravene the commerce clause of the United States Constitution. Mr. Justice PITNEY, who delivered the opinion of the court, said: ''The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property: and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of

government from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States.''

Again in *Shaffer* v. *Carter*, 252 U. S. 37, and in *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, it was held that net income derived from interstate commerce is taxable under a State law providing for a general income tax.

The majority opinion is based wholly upon the assumption that occupation taxes levied for the privilege of carrying on a particular business and a tax on the income from such business are the same thing.

''License and occupation taxes, which are payable in respect to the privilege of engaging in or carrying on a particular business are not income taxes, although the amount of the tax payable by any individual may be measured by the amount of business which he transacts or his earnings therefrom. And conversely, although a person's entire income may be derived from a particular pursuit or trade, a tax on the income as such is not a license or privilege tax.'' Black on Income and other Federal Taxes, § 3. Thus a tax on the sales of a particular commodity, or a tax on the dealer measured by the amount of his sales, is not an income tax. In the same section, the author further said: ''But a franchise tax upon corporations is not an income tax, although it may be called an excise tax. And this is so, whether the tax is laid by the State under whose laws the corporation is organized, and is exacted annually for the privilege of continuing its corporate existence, or is imposed by a different State for the privilege of doing business within its limits, or is imposed by an outside power, such as the United States, upon the franchise of transacting business in a corporate capacity. For this reason, the tax on corporations imposed by Congress in 1909, being laid specifically upon the carrying on or doing of business in a corporate or quasi-corporate capacity, was adjudged not to be an income tax, although the amount of the tax in each instance was measured by the net annual income

of the corporation, but an excise tax, not direct and therefore not invalid because not apportioned among the several states according to population;" citing *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, Ann. Cas. 1912B 1312.

We also quote from Cooley on Taxation, 4 ed., vol. 4, § 1742, the following: "An income tax is to be distinguished from an occupation tax, the amount of which depends upon the income. An excise upon those engaged in a particular occupation, although graded in accordance with income, is an occupation tax and not an income tax. So a tax on oyster tong men on the amount of their sales is not an income tax. A franchise tax on corporations is not an income tax, although its amount is measured by the net annual income of the corporation. A tax on the gross receipts of a railroad is not an income tax."

In § 1743, Judge Cooley says that there is a considerable conflict of opinion as to whether an income tax should be classified as a property tax or an excise tax. Continuing, he said that, if they are to be deemed a property tax, constitutional limitations applicable to property taxes must be applied, thereby limiting the power of the Legislature. If they are excise taxes, such limitations are not applicable.

We think the adjudicated cases bear out the views expressed above. It must be admitted that the cases are in direct conflict, but the difference arises upon the question of whether under clauses of State constitutions similar to the one in question an income tax is a property tax and therefore violates the uniformity clause, and not upon the fact that an income tax and an occupation tax are one and the same thing. In all cases where it is held to be an excise and not a property tax, an income tax has been held to be valid.

In an early case Judge Lumpkin for the Supreme Court of the State of Georgia said that a constitution which would confound income with property in a tax law was quite too refined and subtle, when designed

to operate upon the public at large, and where they are supposed to be used in the sense belonging to the popular language of common life and every day business. *Mayor of Savannah* v. *Hartridge,* 8 Ga. 23.

Again in *Wāring* v. *Savannah,* 60 Ga. 93, the Supreme Court of that State said: "But are gross earnings and interest, coming in from any source, labor, capital, money loaned — are these things property in the sense of the Constitution, and to be taxed as real, genuine property, such as real estate and personal effects, — or are these really income? Certainly the gross earnings of a laboring man are nothing but his income; so it would seem that the earnings of a salaried officer are income; and so the income from capital employed in a bank, or railroad, or manufactory, would seem to be income only. The net income, after expenses are paid, becomes property when invested, or if it be money lying in a bank, or locked up at home. But, to call it property when it is all consumed as fast as it arises — going on the back or in the stomach, or in carriages and horses (which are taxed), or in travel and frolic — to call such income so used property would seem to be a perversion of terms." Continuing, the court said: "The fact is, property is a tree; income is the fruit; labor is a tree; income, the fruit; capital, the tree, income, the fruit. The fruit, if not consumed as fast as it ripens, will germinate from the seed which it incloses and will produce other trees, and grow into more property; but, so long as it is fruit merely, and plucked to eat, it is no tree, and will produce itself no fruit."

The precise point under consideration here under a substantially similar constitutional provision was presented to the Supreme Court of the State of Missouri *in Glasgrow* v. *Rowse,* 43 Mo. 479. In deciding the question the court said: "The power to tax rests upon necessity, and is inherent in every sovereignty. The Legislature of every State possesses it, whether particularly specified in the Constitution as a grant of power to be

exercised or not. In reference to. taxation, the Constitution is not so much to be regarded a grant of power as a restriction or limitation of power. That taxes should be uniform, and levied in proportion to the value of the property to be taxed, is so manifestly just that it commends itself to universal assent. But, notwithstanding the constitutional provision, there are some kinds of taxes that are not usually assessed according to the value of the property, and some which could not be thus assessed; and there is perhaps not a State in this Union, though many of them have in substance the same constitutional provision, which does not levy other taxes than those imposed on property * * *. "There are three general classes of direct taxes; capitation, having effect solely upon persons; *ad valorem,* having effect solely upon property; and income, having a mixed effect upon persons and property."

The argument of the plaintiff's counsel proceeds on the hypothesis that every species of tax comes within the constitutional prohibition. This is a mistake. The whole practice of the State has been different, and it has never been challenged, nor could it be, on legal principles. The statutes provide for a poll tax, which is in violation of the *ad valorem* rule, and is unequal, yet it is clearly within the Constitution. A license is imposed on shows, peddlers, auctioneers, dram-shops, and billiard tables, all of which taxes are in violation of the *ad valorem* principle, but not therefore unconstitutional. The taxes imposed are uniform as to the particular classes, but not in proportion to the taxes assessed on other property. The Constitution enjoins a uniform rule as to the imposition of taxes on all property, but does not abridge the power of the Legislature to provide for a revenue from other sources. It was intended to make the burdens of government rest on all property alike — to forbid favoritism and prevent inequality. Outside of the constitutional restriction, the Legislature must be the sole judge of the properiety of

taxation, and define the sources of revenue as the exigency of the occasion may require. The income tax was uniform and equal as to the classes upon whom it operated: it did not come within the meaning of the term 'property' as used and designated in the Constitution, and I think it was not in conflict with any provision of that instrument."

The same question was again presented to the Supreme Court of Missouri in *Ludlow-Saylor Wire Co. v. Wollbrinck,* 205 S. W. 196, and the reasoning and conclusion of the court in the earlier case was approved by a divided court. Able and instructive opinions were delivered both by the majority and dissenting judges.

On the other hand in *Eliasberg Bros. Mercantile Co. v. Grimes,* 86 So. 56, 11 A. L. R. 300, the Supreme Court of Alabama held that income is property within the meaning of the constitutional provision limiting the tax rate to certain percentage of the value of the taxable property within the State. McClellan, J., a very able judge, dissented on the ground that the expended or exhausted part of the income of the earner is not property held or possessed by him in such manner as to be subject to a property tax.

The Supreme Court of Mississippi had the question for consideration in *Hattiesburg Grocery Co. v. Robertson,* 126 Miss. 34, 88 So. 4, 25 A. L. R. 748, and held that an income tax is an excise tax, and not a tax on property within the meaning of the requirement of the provision of the State Constitution that property shall be taxed in proportion to its value, and shall be assessed for taxes under general laws and by uniform rules according to its true value.

The court said that "income" is the gain derived from capital, from labor, or from both combined, and that income for any given period of time is the amount of gain so derived during the designated period of time.

The court further said that "while a tax on income includes some of the elements both of a tax on prop-

erty and of a tax on persons, it cannot be strictly classified as a tax on either, for it is generically and necessarily an excise, and should be enforced as such unless and until so to do'' would violate the provision of the Constitution adopted to prevent discrimination in the taxation of property. On this point the court said that ''the error in the cases * * * holding that an income tax must be classified as a tax on property results from dissociating gains derived from capital, or from labor, or from both, wholly from the activities relative thereto of the person taxed, and looking alone to the specific property which constitutes the gain so derived.''

There was also a dissent in this case, but it was based upon the opinion that an income tax was a property tax. It is worthy of note that the reasoning of the dissenting opinion is based in part upon a previous decision of the court in *Thompson* v. *McLeod,* 112 Miss. 383, L. R. A. 1918C 893, Ann. Cas. 1918 674. In that case, it was held that a tax of a certain amount per cup or box for the privilege of carrying on the business of extracting turpentine from standing trees is a property tax, within the constitutional provision that taxes shall be equal and unform and that property shall be taxed in proportion to its value, and that when the land is already taxed it is invalid as double taxation.

We cannot see how the majority opinion can find any support from any of the various opinions in *Floyd* v. *Miller Lbr. Co.,* 160 Ark. 17, except perhaps that of JUDGE WOOD, and there is an express disclaimer of going to the views expressed in his dissenting opinion to the effect that a tax levied upon the business of severing our natural resources from the soil was a property tax. Chief Justice McCULLOCH in the concurring opinion of himself and Mr. Justice SMITH commenced his opinion with the declaration that our severance tax statute was not a property tax, but was a tax on a business — an occupation tax. While he expressed views that would lead to the belief that the statute was unconstitutional

as to individuals, he wound up his opinion by stating that both he and Mr. Justice SMITH voted to reverse the decree. This made the statute valid and operative as to individuals; for Mr. Justice HUMPHREYS and myself had, for different reasons, expressed the view that the tax was an occupation and not a property tax; and was therefore valid as to individuals as well as corporations. This made four of the judges expressing the opinion that the tax was a tax on the business of severing our natural resources from the soil; and an occupation tax and that it was a valid statute.

This view is in accord with *Oliver Iron Co.* v. *Lord,* 262 U. S. 172. In that case a tax was laid on the business of mining iron ore, measured by a percentage of the value of the ore mined or produced. On the one hand, it was contended that it was a property tax, and on the other that it was an occupation tax. The court said that a tax laid on those engaged in the business of mining ore, and on them solely because they are so engaged, was an occupation tax. So it would seem to result from our severance tax decision that a severance tax is an occupation and not a property tax, and therefore does not violate the provision of our Constitution that all property subject to taxation shall be taxed according to its value.

Our conclusion of the whole matter is that the effect of our previous decisions that the proviso in art. 16, § 5 of the Constitution, giving the Legislature the power to tax certain occupations, by necessary implication precludes it from taxing other occupations for State purposes and that, if the provision had been left out of the section, the Legislature might have taxed all occupations. The section contains no such restriction as to income taxes. Hence, if we are correct in holding that an income tax is not a property tax, and if it is not the same thing as an occupation tax, it necessarily follows that it is within the discretion of the Legislature to pass a properly classified net income tax law. With the wisdom or neces-

sity of an income tax law, we have nothing to do. Such a law, if within constitutional lines, represents the public policy of the State in the matter because it is passed by that branch of the State Government which determines its economic policy, and which is restricted in its power in the matter only by a sense of duty and responsibility to the people.

Since writing the above, further consideration of the case has prompted me to write the following:

In *Ouachita County* v. *Rumph*, 43 Ark. 525, it was held that the right to impose taxes upon citizens and property for the support of the State government may be restricted by the Constitution, but needs no clause to confer it. The court said that by art. 2, § 23, of the Constitution the State's ancient right of taxation is fully and expressly conceded. But it is said that art. 16, § 5, limits all taxation to taxes on property and certain occupations and privileges. Such view is contrary to the weight of authority.

In Cooley on Constitutional Limitations, 7 ed. p. 713, in discussing the question, it is said: "It is evident, therefore, that the express provisions, which are usual in State constitutions, that taxation upon property shall be according to value, do not include every species of taxation; and that all special cases like those we have here referred to are by implication excepted."

In *Standard, etc., Co.* v. *Attorney General,* 46 N. J. eq. 270, 19 Am. St. Rep. 394, the court said: "In those States in the Union having constitutional provisions requiring equality in the taxation of property, it is uniformly held that such provisions do not abridge or apply to the legislative power of indirect taxation by taxes on franchises, privileges, trades and occupations."

In *Fleetweed* v. *Read* (Wash.) 47 L. R. A. 205, the court said that, under the great weight of authority, a tax on occupation, business, etc. is not, in legal contemplation, a tax on property which falls within the inhibition imposed by the usual constitutional provisions in

relation to uniformity of taxation. To the same effect see *People* v. *Coleman,* 4 Cal. 46; *Aulanier* v. *Governor,* 1 Tex. 653; *Wright* v. *McCullough,* 27 Ind. 223, and *In re Watson,* 17 S. D. 486, 2 Ann. Cas. 321, and case note at 325.

In *Baker* v. *Cincinnati,* 11 Ohio St. 534, the court said that an express direction to impose a tax on all property by a uniform rule does not necessarily exclude taxation upon that which is not property, or cover the whole ground included within the limits of the taxing power.

But it is claimed that the power to impose income taxes is excluded by necessary implication in the proviso allowing the taxation of certain named occupations and privileges upon the principle that the expression of one thing excludes another. In discussing the application of this maxim in *Eyre* v. *Jacob,* 14 Grat. (Va). 422, 73 Am. Dec. 367, the court said: "But this argument would prove too much, for it would sweep away the taxes on deeds, suits, notarial seals, and that class of subjects the constitutionality of which has never been questioned by any one. It would restrict the whole power of taxation to the particular subjects named in the twenty-second and three following sections. But this surely could not have been designed by the framers of the Constitution. If those four sections had been entirely omitted, no one can doubt that the Legislature would have had full power to tax all the subjects to which they relate. In that case it was held: "Although the Virginia Constitution provides that taxes shall be equal and uniform, it is within the constitutional power of the Legislature to impose a tax upon the transmission of estates by devise or by descent, and prescribe the rate of the same."

In *Jenkins* v. *Ewin,* 8 Heisk. (Tenn.) 456, the court had under consideration a clause of the Constitution of the State of Tennessee in all essential respects similar to art. 16, § 5, of our Constitution. The court said:

"This language would seem, at first view, to confer upon the Legislature the power to tax merchants, peddlers, and privileges. Its true object, however, was to indicate with distinctness that the power to tax merchants, peddlers, and privileges was not to be understood as inhibited by the restriction as to the taxation of property. Its meaning is that, although in taxing property the Legislature is forbidden to tax it, except according to its value, yet as to merchants, peddlers, and privileges, the Legislature is not to be restricted, but may exercise the taxing power without restrictions, either as to the amount, or as to the manner or mode of exercising the power."

In this connection it may be stated that the Supreme Court of the state of Tennessee has held that a privilege is any occupation which the Legislature chooses to declare and tax as such. *Burke* v. *Memphis,* 94 Tenn. 692.

On the other hand, our court has restricted the meaning of the word "privileges" to those occupations which are not of common right. Hence, with better reason, we should hold that the proviso was placed in the section for the purpose of inhibiting the Legislature from taxing all occupations, and restricting its power of taxation for State purposes to those only which are expressly mentioned. Here is where the maxim the expression of one thing excludes another applies. We do not think the framers of the Constitution intended to exclude subjects of taxation which were not mentioned in the section. If income taxes and occupation taxes are not the same thing, it would seem reasonable to hold that a restriction as to the kind of occupations that may be taxed ought not to prohibit the Legislature in the exercise of the ancient right of the State to levy taxes, from imposing income taxes, unless such taxes are classed as property taxes. On this point I adhere to my former views. Our Constitution not only protects the life,

liberty and property of the people, but protects them as well in respect to their occupations or means of support.

It results from the authorities cited above that the Legislature may select the subjects of taxes and classify them under the Constitution. Taxes may be imposed on any subject in just proportion to the benefits and protection which such subject receives. The rule of uniformity does not require that all subjects be taxed, nor taxed alike. The requirement is complied with when the tax is levied equally and uniformly on all subjects of the same class and kind. In doing this, some incomes might be exempted and those taxed may be classified. It is absolutely essential to uniformity that the income only should be taxed. In business enterprises the profits are variable, and do not bear any fixed relation to the amount of capital invested. For the reason that the relation between the amount of capital and of profits varies widely, a tax on gross profits would necessarily operate in a discriminatory manner and be arbitrary. To illustrate: A merchant requires capital as a basis of his business operations, and his profits may be large or small as compared with the amount of his capital. Factors, brokers, insurance agents, and the like have but little capital invested, and their profits may be very large. If one spends his income as he makes it or it is consumed in the use, he pays but little or no property tax and escapes entirely, in so far as the profits of his business are concerned, if an income tax be held unconstitutional; yet the protection afforded by the State is as important to him as to others who must bear the burdens of taxation.

Mr. Justice HUMPHREYS concurs in this opinion.

OPINION ON REHEARING.

WOOD, J. On the original consideration of this case the entire court concurred in the conclusion that act No. 345 of the Acts of the General Assembly of 1923, commonly designated as the ''Riggs' Income Tax Law,'' violated the provisions of article 16, § 5, of our

Constitution, and was therefore void. Mr. Justice SMITH, speaking for the majority of the court, says:

"The act is all-comprehending. It includes gains, profits and income derived from salaries, wages or compensation for personal services, of whatever kind and in whatever form paid. It includes income derived from professions, vocations, trades, business, commerce, or sale or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. It includes also incomes from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits. And, after thus including all apparent sources of income, there was added, out of a superabundance of caution that no source of income might be overlooked, the inclusive words, 'and income derived from any source whatever.'"

"The tax authorized by this act, whatever else may be said of it, is an occupation tax and an income tax, because income derived from all pursuits or callings are taxed, except certain exempted incomes enumerated in § 4 of the act, and which need not be recited here.

"It is not a privilege tax, and cannot be sustained as such, because no attempt is made to distinguish between occupations which are of common right and those which might be designated as privileges, and taxed as such. All are alike subject to the tax.

"The act makes no attempt to restrict the imposition of the tax to such occupations as might be taxed as privileges, but imposes the tax as a unit on the entire income of every person subject to its provisions, without regard to the source of the income, and the act must therefore stand or fall in its entirety, as its provisions are not separable. The act proposes a scheme of taxation which is either valid or void, as no separation of the sources of the income was contemplated by the Legislature."

Judge SMITH then reviews all our previous decisions involving the question of whether or not it is

within the power of the Legislature, under article 16, § 5, of our Constitution, to tax occupations which are of common right, and correctly announces the doctrine of these cases to be that ''the State cannot tax for revenue purposes occupations which are of common right.'' And he concludes by saying, ''unless they have been overruled, the State is without power to impose an income tax for State purposes.''

I concurred in the majority opinion. On reconsideration we are asked to modify the opinion and withdraw that part of it which declares that ''the State is without power to impose an income tax for State purposes.''

Now, if an income tax is neither a property tax nor a tax on pursuits and occupations that are of common right, then an income tax law, if properly framed, is not inhibited by article 16, § 5, *supra,* which provides that ''all property subject to taxation shall be taxed according to its value ascertained in a manner to make it equal and uniform throughout the State,'' and that ''hawkers, peddlers, ferries, exhibitions and privileges may be taxed in such manners as the Legislature deems proper.''

After a careful consideration of the authorities cited in all the briefs of counsel as well as the authorities cited in the dissenting opinion of Justices HART and HUMPHREYS and such other cases as I have been able to review, I have reached the conclusion that an income tax is neither a property tax nor a tax on occupations of common right, and that such a tax is not inhibited by the provisions of article 16, § 5, of our Constitution above quoted. Judge HART, in his dissenting opinion, has quoted quite freely from the case of *Glasgow* v. *Rowse,* 43 Mo. 479, and *Hattiesburg Grocery Co.* v. *Robertson,* 88 So. (Miss.) 4, 25 A. L. R. 742, and other cases, and he also cites the later case of *Ludlow-Saylor Wire Co.* v. *Wollbrinck,* 205 S. W. 196, in which the Supreme Court of Missouri, by a divided court, sustained its earlier decision in *Glasgow* v. *Rowse, supra,* the

opinion of the majority being written by Chief Justice Bond. The provisions of the Constitution of Mississippi, article 4, § 112, and of the Constitution of Missouri, article 10, §§ 3 and 4, concerning taxation of property, are of the same purport as our own Constitution.

I cannot hope, by any argument of my own to add force and strength to the argument of Judges HART and HUMPHREYS and of the judges rendering the opinions in the above cases. Suffice it to say that I am convinced from these opinions and the authorities cited therein, that, in the general classification of taxes into property, capitation, and excise taxes, an income tax falls within the latter class—that of excise taxes. As is well said in *Hattiesburg Grocery Co.* v. *Robertson, supra*: "Income is necessarily the product of the joint efforts of the State and the recipient of the income, the State furnishing the protection necessary to enable the recipient to produce, receive, and enjoy it, and a tax thereon, in the last analysis, is simply a portion cut from the income and appropriated by the State as its share thereof, and, while a tax on income includes some of the elements both of a tax on property and of a tax on persons, it cannot be classified as strictly a tax on either, for it is generically and necessarily an excise, and should be enforced as such, unless and until so to do would accomplish the result which § 112 of the Constitution was adopted to prevent, which is to prevent discrimination in the taxation of property, so that all property shall bear its due proportion of the burdens of government."

The leading case cited in all the cases holding that an income derived from real and personal property is itself property is that of *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, and 158 U. S. 601. I have heretofore considered the Pollock case, *supra*, as complete and ultimate authority for holding that an income tax is a property tax. But attention is called in the case of *Hattiesburg Gro. Co.* v. *Robertson, supra*, to the case of *Brushaber* v. *Union Pacific Ry. Co.*, 240 U. S. 1, in

which Chief Justice White, speaking for the entire court, of the holding in the Pollock case, said:

"The conclusion reached in the Pollock case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but, on the contrary, recognized the fact that taxation on *income was in its nature an excise* entitled to be enforced as such, unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone, and hence subject the tax to the regulation as to apportionment, which. otherwise, as an excise, would not apply to it. Nothing could serve to make this clearer than to recall that, in the Pollock case, in so far as the law taxed income from other classes of property than real estate and invested personal property, that is, income from 'professions, trades, employments, or vocations, its validity was recognized; indeed, it was expressly declared that no dispute was made upon that subject, and attention was called to the fact that taxes on such incomes had been sustained as excise taxes in the past. The whole law was, however, declared unconstitutional on the ground that to permit it to thus operate would relieve real estate and invested personal property from taxation and 'would leave the burden of the tax to be borne by professions, trades, employments, or vocations, and in that way what was intended as a tax on capital would remain, in substance, a tax on occupations and labor,' a result which it was held could not have been contemplated by Congress."

It is this language of Chief Justice White interpreting *Pollock* v. *Farmers' Loan & Trust Co., supra,* not quoted by Judge HART in his concurring opinion, that I now wish to stress, because it shows that an income tax

in its essential nature is not a property tax, but an excise tax.*

The author of Cooley on Taxation says: "An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, and business taxes. * * * Generally the term 'excise taxes' is used to distinguish such taxes from taxes on property. It is often very important to determine whether a certain tax is a property tax or an excise tax, i. e., whether (1) a property tax or (2) an occupation, license, business, privilege or franchise tax. Not only are excise taxes governed by many rules entirely different from those which control property taxation, but also there are many constitutional provisions applicable to taxes on property but not to excise taxes. For instance, an excise tax is not within constitutional prohibitions such as those requiring taxation of property by value, uniformity, and equality of taxation. *So such a tax is not objectionable as double taxation, although the property itself is also taxed.*" Cooley on Taxation, vol. 1, 4th ed., §§ 45 and 46.

After stating that it is settled that a Federal income tax is an excise tax, he further says: "In regard to State income taxes, the law is not so clear; generally, however, it has been held that such a tax is not a tax

---

*The celebrated case of *Pollock* v. *Farmers' Loan & Trust Co.* covers 333 pages of the report. The opinions therein are models of judicial industry and thoroughness. They show that the judges gave the case the consideration its transcendent importance demanded, and are notable contributions to Anglo-Saxon jurisprudence on the subject of income-tax law. But I wish especially to call attention to the dissenting opinions of Justices White and Harlan. These are the most exhaustive, learned, forceful, and illuminating judicial pronouncements on the particular subject of *income tax* to be found in all the realm of the adjudicated law. They show conclusively, it seems to me, that, under our American system—our Federal and State Constitutions and statutes—a tax on *incomes* cannot properly be classified as a property tax, but falls in the class of excise taxes.

on property, or, at least, is not such a tax as to be included in the constitutional limitations imposed on property taxes." And further, "the better rule seems to be that an income tax is not a tax on property within a constitutional requirement that taxation on property shall be in proportion to its value." §§ 1743-51.

Mr. Black says: "A tax on income is not a tax on property, and a tax on property does not embrace incomes. * * * For the same reason a tax laid on income is different from a tax laid on the property out of which the income arises, * * * ." Black on Income and other Federal Taxes, 4th ed., § 2.

In 37 Cyc., § 6, p. 759, it is said: "A tax may be levied on income derived from property, in the shape of rent or otherwise, although the property yielding the income is also subjected to taxation; and this does not violate the rule against double taxation, because the two interests or species of property are distinct and severable." The author of the article from which the above quotation is made is Henry Campbell Black. I may say, *en passant,* that I deem it entirely safe to follow such an illustrious judge as the late Chief Justice White and such an eminent text-writer as Henry Campbell Black.

In the cases of *Glasgow* v. *Rowse* and *Ludlow-Saylor Wire Co.* v. *Wollbrinck, supra,* the Supreme Court of Missouri held, quoting from the latter case, that "in directing, as the Constitution does, that taxes on property should be levied according to value, reference was intended to be made to other species of property than that which a person has in his income; that the Constitution did not abridge the power of the Legislature to provide revenue by a taxation of income; that its command was directed to other and distinct classes of property, which, on account of their peculiar nature, could be measured in value, become the object of taxation independent of the owner, and were susceptible, by proper procedure, to lien or seizure for the enforcement of the tax. The court held that it was property having

such a nature and characteristic, and not the mere usufruct of such property, nor the earnings of physical or mental labor, which was referred to in the clause under review, and intended thereby to be subjected to taxation according to its value.''

In the case of *Floyd* v. *Miller Lumber Company,* 160 Ark. 17-46, in construing what is commonly known as the severance tax act, among other things, I said: ''Since the act levies a tax on the business of severing from the soil or water, for commercial purposes, natural resources,' it lays upon the owners of such resources a tax burden which restricts them from the free enjoyment and use of these resources, from the only possible use they can make of their property. It deprives them of a common right, which they had under all our previous decisions, even down to *Standard Oil Co.* v. *Brodie,* 153 Ark. 114.''. Then I quoted from the case of *Thompson* v. *Kreutzer,* 72 So. 891, and cited the case of *Thompson* v. *McLeod,* 112 Miss. 383, and also *Dawson* v. *Ky. Distilleries Co.,* 255 U. S. 288. The Supreme Court of Mississippi says that there is no conflict in the above cases with its holding in the case of *Hattiesburg Grocery Co.* v. *Robertson, supra;* the distinction being that, in the former cases, the tax was on the right to own and use property, whereas in the Hattiesburg Grocery Company case the tax was on the ''income'' from, and not on the right to own and use property. In my dissenting opinion in the severance tax case and in the cases I there cited, the tax was condemned because it was a tax on the right *to own and use property, and therefore a property tax.*

In the recent case of *Replogle* v. *Little Rock,* 166 Ark. 617, we said: Under our State and Federal Constitutions, all men have the inalienable right to acquire, possess and protect property and to pursue their own happiness, and of these sacred rights no man can be deprived without due process of law.''

But a tax on the right to own and enjoy the use of property is one thing, while a tax on the *income*

derived from such use is an entirely different thing. A tax, whether prohibitive or restrictive, on the right of ownership and use is forbidden, but a tax on the *income* derived from the use of property is allowed. If one were not guaranteed the right to acquire, own and use property, then there would be no property and no income therefrom to tax. But where one is allowed to own and use property and derives an income therefrom, such income may be taxed, and such a tax is not a tax on the property which produces the income, but is a tax on the income, and therefore such a tax does not come within the constitutional restrictions and limitations applicable to property taxes, *i. e.,* that such taxes must be *ad valorem,* equal and uniform.

To my mind the distinction is very clear between a tax on the right to own and use property, which is a tax on the property itself, and a tax on the income thereof, which is the product of such ownership and use. The term "income" in constitutional and statutory provisions in regard to taxation means net gain derived from capital, or labor, or from both combined, during the fiscal year or period set apart by the taxing power for its ascertainment. The word "income" as used for taxation purposes "involves time as an essential element in its measurement or definition, and thus differs from capital, which commonly means the amount of wealth which a person has on a fixed date. Income may be derived from capital invested or in use; from labor, from the exercise of skill, ingenuity, or sound judgment, or from a combination of any or all of these factors. It may be defined as the gain derived from capital, from labor, or from both combined." 26 R. C. L., § 120; *Tax Com.* v. *Putnam,* 227 Mass. 522-26; *Stratton's Independence Ltd.* v. *Howbert,* 231 U. S. 399-415. A good definition is contained *In re Biddlecope,* 5 British Columbia, 39-40. It is usually construed in constitutional and statutory provisions "as meaning net income as opposed to gross receipts." "Income means the balance of gain

over loss, and where there·is no such balance of gain there is no income which is capable of being assessed." 21 R. C. L., § 122; note to *Niland* v. *Niland,* 36 Ann. Cas. 1915B, p. 1129; Cooley on Taxation (Income Tax), § 49.

A tax on income, as thus defined and ascertained, is not a property tax. The income or gain thus derived from capital, from property, from labor, or from both combined, because of its fluctuating and indeterminate nature, during this period and process of its making, has not yet become an investment or an increment to the permanent wealth or property of the individual who has to pay the tax, and therefore it is not a property tax. It is, however, an income tax, and the one who is the recipient of such an income may be subjected to an excise or portion cut therefrom as his modicum of the revenue necessary to meet the burdens of the government which has guaranteed to him the right to acquire and use his property, or to pursue the avocation or business from which the income is derived, and afforded him its protection for all of these rights while the income was being produced.

I am well aware that there is a conflict of authority on the question as to whether an income tax falls under the classification of a property tax or an excise tax, but I believe that the better reason, and the weight of authority, is that an income tax is an excise and not a property tax. The cases pro and con are cited in the briefs.. The error in the cases holding that an income tax is a property tax, says the Supreme court of Mississippi in *Hattiesburg Grocery Co.* v. *Robertson, supra,* "results from dissociating gains derived from capital, or from labor, or from both, wholly from the activities relative thereto of the persons taxed, and looking alone to the specific property which constitutes the gain so derived."

2. Having reached the conclusion that an income tax is not a property tax, but an excise tax, and that, as such, it is not within our constitutional provision

requiring the taxation of property to be *ad valorem,* equal and uniform, we come to the next and only question of whether an income tax is prohibited by the following language of article 5, § 16, *supra,* to-wit: ''Provided the General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper.'' In a long line of decisions covering a period of more than eighty-five years, beginning with the case of *Stevens & Woods* v. *State,* 21 Ark. 291, on down to *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, our court has consistently construed the above language as prohibiting the Legislature from declaring as a privilege and taxing as such for State revenue those pursuits and occupations which every one may follow as a matter of common right. Those cases have not been overruled, and therefore the above provisions of our Constitution should be interpreted to read as follows: ''The General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper, but it shall not tax for purposes of State revenue pursuits and occupations that are matters of common right.'' The effect of this construction of our Constitution by all of our former decisions is that the Legislature has no power to declare as a privilege and tax for revenue purposes occupations that are of common right, but it does have the power to declare as privileges and tax as such for State revenue purposes those pursuits and occupations that are not matters of common right, and to declare and tax as a privilege for State revenue any other subjects or sources of taxation that are not pursuits or occupations of common right.

Now, of the various forms and kinds of excise taxes, a tax on incomes holds its own place; it falls in its own particular and distinctive class, and must not be confounded with occupation, license, franchise, and business taxes. While an income tax is a tax laid on the income

from property or occupation, it is nevertheless a special and direct tax upon the subject designated for purposes of taxation as income, whereas an occupation tax is an excise upon those engaged in a particular occupation, and, although the amount of the tax may be graded in accordance with the income derived from the occupation, nevertheless a tax on the right to pursue the occupation and carry on the business is a license or occupation tax, and not an income tax. 1 Cooley on Taxation, § 49; *Banger's Appeal,* 109 Pa. 79-95; *Central Granaries Co.* v. *Lancaster County,* 77 Neb. 311-318, 109 N. W. 385-87; 26 R. C. L., § 116, p. 116. The right to engage in an employment, to carry on a business, or pursue an occupation or profession not in itself hurtful or conducted in a manner injurious to the public, is a common right, which, under our Constitution, as construed by all our former decisions, can neither be prohibited nor hampered by laying a tax for State revenue on the occupation, employment, business or profession. But here again let me observe that the occupation, business, profession, or employment is one thing, while the income derived therefrom is an entirely different thing. The former may not be taxed, but the latter may. Thousands of individuals in this State carry on their occupations as above defined who derive no income whatever therefrom. But, where an income is derived from any occupation, business, profession or employment, then the Legislature may lay thereon a tax for the purpose of raising revenue to meet the expenses of government. While, under our former decisions, it is not within the power of the Legislature to lay a tax on occupations of common right for State revenue, yet it does not follow from these decisions, as I interpret them, that it is not within the power of the Legislature to tax the income derived therefrom for State revenue. The canon *"expressio unius est exclusio alterius"* employed in the construction of statutes and Constitutions has no application here, for the reason that an income tax, as we have shown, is not the same

thing as an occupation tax. Certainly, this court has not heretofore held, and I do not believe that we should now hold, that taxes on property, and on occupations which are not matters of common right, are, together with a capitation tax, the only sources of State revenue. The effect of such a holding, it occurs to me, would be to nullify the power of the Legislature to declare as privileges and tax as such any subjects or sources of taxation not expressly designated in the Constitution and all other privileges that are not occupations which all men may pursue as matters of common right. In other words, as I construe our Constitution, it is within the power of the Legislature to lay a property tax on all property for State revenue, the only limitation being that such tax must be *ad valorem,* equal and uniform, and to select and lay taxes on all other sources or subjects of taxation for State revenue except on occupations that are matters of common right. On the latter, taxation for State revenue is prohibited by former decisions. But for these former decisions, it would have been within the power of the Legislature to declare as privileges and tax as such for State revenue purposes even those occupations which are of common right. Such is the holding in Tennessee and other States under constitutional provisions similar to ours. *Mabry* v. *Tarver,* 1 Humphreys, 94-98; *State ex rel.* v. *Parr.* 109 Minn. 147-152; *Oliver Iron Co.* v. *Lord,* 262 U. S. 172-179. And where such is the rule of the State courts, the Supreme Court of the United States has approved the same. In the last case it is said: "The Legislature of the State may exercise a wide discretion in selecting the subjects of taxation, particularly as respects occupation taxes."

If we apply the rule that the expression of one thing is the exclusion of another so as to exclude all other sources of taxation except property, captitation, and taxes on occupations that are not matters of common right, which seems to be the holding .in the original opinion of the majority, then what would become of the

other and numerous forms of excise taxes, such as taxes on inheritances, legacies, devises, dower, curtesy, taxes on the sale of gasoline to be used in motor-driven vehicles on the public highways, and taxes on the vehicles themselves when so driven, taxes on sales of certain commodities, as cigarettes and cigars, and other commodities deemed luxuries and not necessities, taxes on franchises, etc., many of which, under the classification of privilege taxes, this court has already sanctioned as sources of State revenue? *Baker* v. *State,* 44 Ark. 134; *State* v. *Handlin,* 100 Ark. 175; *State* v. *Bonnie,* 156 Ark. 169; *Standard Oil Co.* v. *Brodie,* 153 Ark. 114. In *Baker* v. *State, supra,* speaking of the holding in *Washington* v. *State,* 13 Ark. 752, we said: "We do not understand this case, reading it all together, to limit the power of legislation for State purposes to the taxation of such privileges as were technically known as such at the common law, notwithstanding an expression to that effect occurs in the opinion." And in the case of *Standard Oil Co.* v. *Brodie, supra,* speaking still further of the holding in *Washington* v. *State,* we said: "The restriction is not to the privileges specifically mentioned in the Constitution nor privileges which were technically known as such at the common law, but that the restriction relates merely to privileges which are matters of common right."

These, and all our former cases holding that the Legislature does not have the power to lay a tax for State revenue on privileges that are matters of common right, refer to those occupations which all men have the common right to pursue. In none of the cases were we speaking of the manifold other forms and kinds of excise taxes, and, as I have endeavored to show, an income tax is not the same thing as an occupation tax at all, and these cases therefore have no reference whatever to an income tax, and a conclusion based on the assumption that an income tax and an occupation tax is the same is necessarily erroneous. As I interpret our original opinion herein, we hold that, because the Legislature cannot,

under the Constitution, lay a tax for State revenue on occupations of common right, it follows that it also cannot lay a tax for State revenue on incomes. This is an obvious *non sequitur*. It occurs to me now that to adhere to that conclusion would in effect overrule many former decisions of the court. Besides, it would be against the doctrine of all the authorities without exception, so far as I know, to the effect that the State has the power to select the sources and subjects of taxation, and to lay taxes on all those who come under the aegis of its Constitution and laws while they are in pursuit of happiness, acquiring, possessing, and enjoying the use of their property, and carrying on their varied occupations. It is a sovereign, indispensable and inherent power reserved and possessed by the people, and is committed by them in their fundamental law to their supreme lawmaking body in order to raise revenue to meet the expense of government. It is an all-pervasive and untrammeled power, unless restricted by express constitutional limitations. Cooley on Taxation (3rd ed.) p. 9; Cooley, Const. Lim. (6th ed.) 587.

As is well said by the Supreme Court of Ohio, "This power would exist without a written Constitution, and the object of constitutional provisions is to regulate its exercise by such limitations and restrictions as will protect the people against unjust or arbitrary action of the governing power." *Western Union Tel. Co.* v. *Mayor,* 28 Ohio 521. Judge Cooley says: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the Legislature in its discretion shall at any time select it for revenue purposes." Cooley on Taxation, vol. 1, third edition, p. 9, and numerous cases cited by him in note. See also *Little Rock* v. *Prather,* 46 Ark. 471-

477; *Fort Smith* v. *Scruggs,* 70 Ark. 549; *Ex parte Byles,* 93 Ark. 612-616; *Floyd* v. *Miller Lumber Co.,* 160 Ark. 17-25, where the above doctrine announced by Judge Cooley is expressly recognized.

My conclusion of the whole matter is that there are two, and only two, limitations in our Constitution upon the power of the State to raise revenue for State purposes, namely, (1) that taxes on property must be *ad valorem,* equal and uniform, and (2) that the Legislature cannot lay a tax for State revenue on occupations that are of common right. A tax on incomes is neither a property tax nor an occupation tax, and is not prohibited or excluded by our Constitution.

Therefore, for the reason stated, I concur in the conclusion reached by Justices HART and HUMPHREYS, that "it is within the discretion of the Legislature to pass a properly classified net income tax law," and such therefore is now the opinion and holding of the majority of this court.

SMITH, J. (dissenting). In my original opinion in this case, which, at the time it was handed down, was the opinion of the majority, I did not attempt to distinguish between income taxes and occupation taxes. It was stated that the act imposed both an occupation tax and an income tax, and, as the conclusion was announced that the State could not impose either, it was deemed unimportant to point out the distinction between the two.

I have never believed that an income tax is a property tax, nor do I understand that any of the Justices held to that view unless it was entertained by Mr. Justice WOOD, and he has now announced his conviction that it is not a property tax. I concur in all that the learned Justice says on that subject in his supplementary opinion.

It is true the opinions of the court which were reviewed, beginning with the case of *Stevens* v. *State,* 2 Ark. 291, dealt with attempts to tax occupations, and

not incomes, but that point was not regarded as important because of the reasons. given for. holding that occupations could not be taxed. That reason was as applicable to taxes on income as it was to a tax on an occupation, and that reason was that the Constitution, by designating the subjects of taxation for State purposes, had excluded the subjects of taxation which were not named.

These cases speak for themselves, and I submit, without again reviewing them, that the reason given in all those cases, for holding that counties and cities may tax occupations, but that the State could not do so for State purposes, was that the right had not been denied in the one case, while it had been in the other.

It would appear that if the State may tax incomes for State purposes, it may also tax occupations. No sound distinction can be drawn between the right to tax the one, rather than the other. The right to tax both exists unless the Constitution has withheld that right.

Now, it has never been held that the Constitution expressly denied the State the right to tax occupations. The conclusion which has heretofore been so consistently followed that the State did not have this right resulted from the construction given the provisions of the Constitution which enumerated what the State might tax. These cases all recognized that there were two ways of imposing a constitutional restriction, viz., by express negation, or by an affirmation which implies a negation, and it was only through the application of this last method that the. conclusion was reached that an occupation tax for State purposes could not be imposed.

If that rule of construction had not been invoked and applied, the court could not have held that the State did not have authority to tax occupations. No other reason was ever found or suggested for denying the State this right. All the prior cases denying the

State this right are bottomed upon this proposition, as I attempted to point out in my original opinion.

If this is true, there is as much authority to levy an occupation tax as there is to levy an income tax. The Constitution does not expressly deny the right to levy either, nor does it confer the right to tax either. Now, if the enumeration of the subjects of State taxation, which does not include occupations, operates, for that reason, to exclude occupations from taxation, how can it be said that the State can tax one but cannot tax the other?

When one considers the provisions of our Constitution in regard to the subjects of taxation for State purpose and follows the reasoning by which this court, at an early date, held that occupations could not be taxed for State purposes, it appears to me that it must follow necessarily, inevitably, that, if incomes can be taxed, so may occupations be, and that, if occupations cannot be taxed, incomes cannot be.

As I understand what is now the majority opinion, the State does not have the right to tax all incomes, but may enact a properly classified net income tax law. It appears to me that the distinction between the right, under our Constitution, to tax net income and other income is as elusive as the distinction between the right to tax occupations and income. The State might tax incomes, either gross or net, and occupations as well, unless the Constitution has denied the State this right, and, if the right exists, it is the province of the Legislature to determine how it shall be exercised.

I, therefore, respectfully dissent from what is now the majority opinion.

McCULLOCH, C. J., concurs in the opinion of Judge SMITH.